1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  DAMALI A. TAYLOR (CABN 262489)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       FAX: (415) 436-6753
        damali.taylor@usdoj.gov
8
   Attorneys for the United States of America
9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13
   UNITED STATES OF AMERICA            )   CASE NO. CR 15-126 WHA
14                                      )
        v.                             )   **UNITED STATES' OPPOSITION TO**
15                                      )   **DEFENDANT GRISSETT'S MOTION FOR**
   VLADIMIR HANDL, et. al.,            )   **BILL OF PARTICULARS**
16      Defendants.                    )
                                        )
17                                      )
                                        )
18 _____ )

19 **I.      INTRODUCTION**

20         Defendant Grissett is charged in Count One Hundred Thirty-Two of the Superseding Indictment

21  with conspiracy to distribute cocaine, in violation of 21 U.S.C. Section 846.  *See* Exhibit 1 (Superseding

22  Indictment); Docket No. 129 (Order to Unseal Superseding Indictment).  The Superseding Indictment

23  identifies his co-conspirators by name, includes the time period for the conspiracy, and identifies the

24  drug at issue.  Notwithstanding, Grissett has moved the Court for a bill of particulars.  He argues that the

25  indictment "fails to inform defendant Grissett of the specific charges against him."  Motion at 3:27.  The

26  government respectfully submits that this argument fails as a matter of law.  Defendant has a sufficiently

27  detailed Superseding Indictment and is using the motion as a means of requesting evidentiary details

28  about the government's case, not for necessary information about the charges.  Accordingly, the

                                        1

1  Motions should be denied.

2  **II.   RELEVANT FACTUAL BACKGROUND**

3         Defendant Grissett was initially charged via Complaint on March 18, 2015.  On March 24, 2015,

4  a Grand Jury in the Northern District of California returned a Superseding Indictment against defendant

5  Grissett and ten others.  Count One Hundred Thirty-Two of the Superseding Indictment, which is the

6  subject of the instant motion, charges seven of the eleven defendants and alleges as follows:

7         From at least in or about March 2014, up through and including the date of this Indictment, in the
          Northern District of California and elsewhere, the defendants,

8                         (I) VLADIMIRHANDL,
                          (2) MICHAEL ROSE,

9                         (5) DAVID GAITHER,
                          (8) PAUL FINK,

10                        (9) JOHN DAVID MCGAHA,
                          (10) DOMINIC GABRIEL GRISSETT, and

11                        (11) RICHARD OBRYANT BUSH,

12  and others known and unknown, unlawfully, knowingly, and intentionally combined, conspired,
    confederated, and agreed together and with each other to distribute a controlled substance and to

13  possess a controlled substance with intent to distribute, to wit, 5 kilograms and more of mixtures

14  and substances containing a detectable amount of cocaine, in violation of Title 21, United States
    Code, Sections 84l(a)(l) and (b)(l)(A).  All in violation of Title 21, United States Code, Section

15  846.

16  *See* Exhibit 1.

17  **III.   APPLICABLE LAW**

18         Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment:

19         must be a plain, concise, and definite written statement of the essential facts constituting
           the offense charged.  [. . .]  For each count, the indictment or information must give the

20         official or customary citation of the statute, rule, regulation, or other provision of law that
           the defendant is alleged to have violated.

21

22  Fed. R. Crim. P. 7(c)(1).

23         The Ninth Circuit has repeatedly held that an indictment tracking the charged offenses' statutory

24  language is generally sufficient.  For example, in *United States v. Davis*, the Ninth Circuit held that:

25         An indictment must be a "plain, concise, and definite written statement of the essential
           facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "[A]n indictment is

26         sufficient if it, first, contains the elements of the offense charged and fairly informs the
           defendant of the charge against which he must defend, and, second, enables him to plead

27         an acquittal or conviction in bar of future prosecutions for the same offense."  *United
           States v. Bailey,* 444 U.S. 394, 414 (1980) (quotation marks omitted).  In cases where the

28         indictment "tracks the words of the statute charging the offense," the indictment will be
           held sufficient "so long as the words unambiguously set forth all elements necessary to

2

constitute the offense." *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir.1989) (quotation marks omitted).

336 F.3d 920, 922 (9th Cir. 2003); *see* Fed. R. Crim. P. 7(c).

*See also United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001) (no reason to invalidate the indictment because it did not go further than charging the statutory elements of the offense.); *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("bare bones" information that tracked statutory language was generally sufficient); *United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991) ("an indictment that sets forth the charged offense in the words of the statute itself is generally sufficient"); *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir.1989) (where indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense). The Ninth Circuit has also instructed that an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (*citing United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)).

Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars." The purposes of a bill of particulars are threefold: (1) to inform the defendant of the nature of the charges against him with enough precision to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at trial; and (3) to protect the defendant against future prosecution for the same offense. *See United States v. Giese*, 597 F.2d at 1180-1181. A trial court has broad discretion in deciding if a bill of particulars is necessary, and its decision will not be reversed absent an abuse of discretion. *See Will v. United States*, 389 U.S. 90, 99 (U.S. 1967); *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973). A bill of particulars is not necessary if the Government has adequately informed the defendant of the charges against him through the "indictment and all other disclosures," and provides full discovery to him. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983); *see United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984); *Giese*, 597 F.2d at 1180; *Clay*, 476 F.2d at 1215. Here, defendants have failed to demonstrate any need for a bill of particulars.

1   A defendant is "not entitled to know all the evidence the government intends to produce," and is

2   entitled to a bill of particulars only if it is necessary to understand the charges.  *See Yeargain* v. *United*

3   *States*, 314 F.2d 881, 882-883 (9th Cir. 1963); *Cooper* v. *United States*, 282 F.2d 527, 532 (9th Cir.

4   1960).  Thus, a defendant's request for the "'when, where and how' of every act in furtherance of the

5   conspiracy [is] the equivalent to a request for complete discovery of the government's evidence, which

6   is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1181; *Rodella* v. *United States*, 286 F.2d

7   306, 310 (9th Cir. 1960) (holding that Government was not required to identify witnesses it might or

8   might not call in bill of particulars).

9   Similarly, a bill of particulars is not to be used: "(1) to obtain the names of any unknown

10   conspirators; (2) to determine the exact date on which the conspiracy allegedly began; and (3) to

11   delineate all other overt acts that comprised the charged activity."  *United States* v. *Dicesare*, 765 F.2d

12   890, 897 (9th Cir. 1985); *accord United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990)

13   ("'Acquisition of evidentiary detail is not the function of the bill of particulars.'") (quoting *Hemphill* v.

14   *United States*, 392 F.2d 45, 49 (8th Cir. 1968)); *United States* v. *Henry*, 861 F. Supp. 1190, 1197

15   (S.D.N.Y. 1994) (holding that a bill of particulars "should not function to disclose evidence, witnesses,

16   and legal theories to be offered by the Government at trial or as a general investigative tool for the

17   defense").

18   In order to compel the issuance of a bill of particulars, the defendant must demonstrate that

19   "surprise, prejudice, or an increased risk of double jeopardy will occur stemming from alleged

20   shortcomings of the indictment."  *United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985).  The

21   defendant cannot rely on conclusory assertions claiming surprise, and no bill of particulars is required

22   when a "common sense practical reading of indictment" would inform a defendant of the charges

23   against him. *Id.*; *Robertson*, 15 F.3d at 874 (defendant's conclusory statements insufficient to justify a

24   bill of particulars).  Here, the defendant fails to meet this showing.

25   **IV.    THE SUPERSEDING INDICTMENT PROVIDES SUFFICIENT NOTICE**

26   A review of the conspiracy charge against defendant Grissett in Count One Hundred Thirty-Two

27   of the Superseding Indictment clearly shows compliance with the pleading requirements of Rule 7(c).

28   It includes the words of the statute and each of the elements of the offense.  Specifically, Title 21,

4

United States Code Section 846 states as follows: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The elements of conspiracy to possess with intent to distribute a controlled substance are that there was an agreement between two or more persons to possess a controlled substance and that the defendant joined in the agreement knowing of its purpose and intending to help accomplish it. *United States v. Reed*, 575 F. 3d 900, 923 (9th Cir. 2009). To allege conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, the indictment need not allege any overt acts in furtherance of that conspiracy. *United States v. Shabani*, 513 U.S. 10, 13-14 (1994).

Here, notwithstanding the fact that he has received discovery since he was charged, the Superseding Indictment itself provides defendant Grissett with:

- the beginning month and year of the conspiracy,

- the end date of the conspiracy,

- the district in which the conspiracy occurred,

- the names of his co-conspirators,

- the type and approximate amount of the drugs at issue,

Thus, as a legal matter, the argument that defendant Grissett has somehow not been placed on notice in the Superseding Indictment as to the conspiracy with which he is charged is specious. *Davis*; *United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001) ("We see no reason to invalidate Parga-Rosa's indictment because it did not go further than charging the statutory elements [of the offense]."); *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (holding that "bare bones" information that tracked statutory language was generally sufficient); *United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991) ("an indictment that sets forth the charged offense in the words of the statute itself is generally sufficient").

It is significant that the defense does not cite to a single apposite case. Throughout his motion, the defendant relies on cases which focus on RICO conspiracy charges. This is, of course, problematic since the defendant is not charged with RICO conspiracy. The government can only conclude that the defendant has failed to cite to any drug conspiracy cases because drug conspiracy counts are routinely

1   and properly charged in precisely this manner in this District.  For example, in a recent case that

2   included a drug conspiracy charge under 21 U.S.C. § 846, the Honorable Yvonne Gonzalez-Rogers

3   considered and denied a motion to dismiss which argued that the indictment did not contain an adequate

4   statement of the facts underlying the drug conspiracy charge.  *See United States v. Boyd*, Order Denying

5   Motion to Dismiss and Motion to Sever, CR 14-168 (Docket No. 77), attached hereto as Exhibit 2.  The

6   Court was clear that an Indictment that "identifies by name specifically the co-conspirators, and it

7   includes the type of the drug at issue" and further tied the conspiracy to an end date provided sufficiently

8   clarity to protect the defendant's rights under Federal Rule of Criminal Procedure 7(c).  *See id.*  Five

9   months ago, the Honorable Edward M. Chen also denied a motion for a bill of particulars for a drug

10  conspiracy indictment alleging that defendants "Zhang and Jiang conspired at least on or about

11  November 5, 2014 in the Northern District of California and elsewhere to possess with intent to

12  distribute and manufacture more than 1,000 plants."  *United States v. Zhang*, CR 13-731 EMC (Docket

13  No. 98) (denying motion for bill of particulars), attached hereto as Exhibit 3.  This is in line with Ninth

14  Circuit precedent.  *United States v. Forrester*, 616 F.3d 929 (9th Cir. 2010)( "[A]n indictment that

15  specifies an end date is sufficient to apprise defendants of the charges and enable them to prepare a

16  defense.").

17      Even the RICO conspiracy cases on which the defendant relies do not assist him.  For example,

18  in *United States v. Cerna*, 2009 WL 2998929 (N.D. Cal. 2009), this Court dealt with a very different set

19  of charges than the charge against the defendant in this case.  The distinction between the charges in the

20  two cases is very important to the analysis.  In *Cerna*, most defendants were charged with RICO

21  Conspiracy, as well as with VICAR Conspiracy to Commit Murder in violation of Title 18, United

22  States Code, Section 1959(a)(5), that spanned the life of the RICO conspiracy, and VICAR Conspiracy

23  to Commit Assault with a Dangerous Weapon, in violation of Title 18, United States Code, Section

24  1959(a)(6), that spanned the life of the RICO conspiracy.  In addition, those same defendants were

25  charged collectively in a single Count Four with violating Title 18, United States Code, Section 924(c),

26  Use/Possession of a Firearm in Furtherance of a Crime of Violence, that spanned the time period of the

27  entire conspiracy.  The basic theory and evidence behind the VICAR conspiracy charges were that

28  members of MS-13 had an agreement and obligation to attack, do violence, and attempt to murder the

1  enemies of the gang, including rival gang members, and to "hunt" those rivals. That was a tenet of the

2  gang and an agreement that was accepted upon membership. In addition, the members of the gang

3  collectively and individually possessed firearms in furtherance of the conspiracy to commit murder, in

4  violation of Section 924(c). While this Court ultimately upheld the validity of these charges, it ruled

5  that the government must further particularize the defendants' respective substantive possessions of

6  firearms – if there were any – that would constitute a 924(c) violation and/or declare that the premise of

7  the charge was one of constructive possession and/or Pinkerton liability if the government were to

8  proceed on that theory. *Cerna* was obviously a far cry from the drug conspiracy charge against the

9  defendant in this case. It is simply inapposite and should be treated as such.

10      Unfortunately for defendant, other RICO cases that stem from this District also do not support

11  the instant Motion. In *United States v. Cervantes*, 12-CR-792 (YGR) (N.D. Cal. 2013), Docket No. 180,

12  for example, the Honorable Judge Gonzalez Rogers evaluated extensive requests for a bill of particulars

13  and denied all requests with the exception of requiring particulars as to a single phrase of "other criminal

14  conduct." *Id*. at 7-11. In *Cervantes*, it is worth noting, the RICO Conspiracy charged in Count One did

15  not specify any overt acts. Furthermore, in Cervantes, the government alleges a VICAR Conspiracy to

16  Commit Murder and a VICAR Conspiracy to Commit Assault with a Dangerous Weapon and a

17  corresponding generic 924(c) violation attached to the conspiracy counts. The trial court found no basis

18  to require further particulars in that case. *Id*. at 9-10.

19  **V.     THE DEFENDANT HAS BEEN GIVEN ADDITIONAL DISCLOSURES**

20      In his motion, the defendant also argues that "Count 132 alleges a conspiracy beginning in

21  March 2014, and yet the discovery reveals that Grissett's only contact with any of the other defendants

22  was on a single day, March 17, 2015, in South Carolina, and the only other defendants he had any

23  contact with were Handl and his codefendant Bush." Motion at 4:8-11. This argument should fail for

24  two reasons. First, it is axiomatic that all members of a conspiracy need not join it at the same time, and

25  that one may become a member of a conspiracy without knowing of all the details of or the all the

26  participants in the unlawful scheme. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir.1980);

27  *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.1977); *United States v. Perry*, 550 F.2d 524, 528

28  (9th Cir.1997); *United States v. Thomas*, 586 F.2d 123, 132 (9th Cir.1978).

Next, the defendant's motion has provided an inaccurate representation of the disclosures made to him. Defendant Grissett was initially charged in this case via Complaint on March 18, 2015. CR 15-70336, attached hereto as Exhibit 4. Both the Complaint and the discovery provided to the defense reveal far more than the defendant now claims in his motion. They establish that, while Handl and Rose were laundering putative drug money from an undercover agent (the "UC") who they believed worked for a drug lord, Handl repeatedly asked the UC to supply him with drugs. The UC refused to do so but eventually relented by roughly March of 2014. At that time, Handl introduced the UC to co-conspirator Paul Fink, who advised the UC that he had a property he anticipated selling and would use some of the proceeds of this sale to pay the UC for drugs.

The discussions between Handl, Fink, and the UC continued for months. In or around early 2015, Handl, Fink, and the UC agreed that the UC would loan money to Handl and Fink, which they would use to buy cocaine from the UC. This loan would be secured by Fink's property. On March 5, 2015, Handl and the UC discussed further details of the cocaine purchase through a Skype conversation. Handl wanted to avoid personally handling the product and would prefer for it be handed directly to his cocaine buyer. The UC advised Handl the UC's associates would not want to meet a new guy without having him checked out by "security guys on the payroll," a coded reference to dirty police officers. Handl agreed to provide names, pictures, license plates, etc., to facilitate the background check. On March 10, 2015, Handl sent a text message to the UC with a photograph of a driver's license of his cocaine buyer. The driver's license was for defendant Grissett.

On or about March 17, 2015, the UC met with Handl, Grissett, and Bush, each of whom discussed the impending cocaine transaction with the UC. Grissett and Bush each provided assurance that they would be able to sell the drugs supplied by the UC. Handl agreed to purchase 3 kilograms of cocaine from the UC the following day and ordered an additional 12 kilograms of cocaine to be delivered a week later. Handl then paid the UC approximately $31,000 in cash as an initial payment for the 3 kilograms of cocaine.

Following this meeting with Handl, Grissett, and Bush, the UC met with defendants Rose and Gaither. When Rose and Gaither learned of the cocaine deal with Handl, they advised the UC that they knew of a police officer named David McGaha who could help guard the cocaine shipment. Rose,

Gaither, and the UC discussed the terms for employing McGaha and eventually agreed that the UC would pay McGaha $5,000 for protecting his drug shipment to Handl and Gaither would receive a $5,000 recruiting fee.  The three met again later that day and confirmed the arrangement.  The UC also provided Gaither with $5,000 and a "burner" cellular telephone to deliver to McGaha.

Later that evening, a second undercover agent received a call from the burner telephone that had been provided to Gaither to give to McGaha, and the caller confirmed to the second undercover agent that he had received the "gift" (i.e., the $5,000) and that he would advise the second undercover agent where "all the cops eat."  The next day, law enforcement officers went to McGaha's home.  He surrendered to them the burner telephone and $5,000 in cash and admitted that he had received both items from Gaither.  He also admitted that he had agreed to provide protection for some sort of "product transfer" involving something illegal, although he claimed he did not know the transfer would involve drugs.

Thus, defendant Grissett is not only on notice of the conspiracy with which he is charged—which is all the law requires—he is further aware of the details of his role in it.  His protestations to the contrary ring hollow.  The motion should be denied.

**VI.   CONCLUSION**

The defendant's demand for specifics of the government's underlying evidence and evidentiary theory is not a proper basis for a bill of particulars.  For all of the foregoing reasons, the defendant's motion for a bill of particulars should be denied.

Dated: August 5, 2015                                        Respectfully submitted,

                                                            MELINDA HAAG
                                                            UNITED STATES ATTORNEY

                                            By:     _____/s/_____
                                                            Damali Taylor
                                                            W.S. Wilson Leung
                                                            Assistant United States Attorneys

9

# Exhibit 1

1   MELINDA HAAG (CABN 132612)
United States Attorney

2

3

4

**FILED**

2015 MAR 24  A 11: 20

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CA

5   **SEALED**
**BY COURT ORDER**

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11   UNITED STATES OF AMERICA            )   No. CR-15-0126 WHO
                                        )
12                                       )
         v.                             )
13                                       )   VIOLATIONS:  Title 18, United States Code, Section
                                        )   1962(d) – Racketeering Conspiracy; Title 18, United
14   (1) VLADIMIR HANDL,                 )   States Code, Section 1962(c) – Racketeering; Title
     (2) MICHAEL ROSE,                   )   18, United States Code, Section 1956(h) – Money
15   (3) PETER SCALISE,                  )   Laundering Conspiracy; Title 18, United States Code,
     (4) PML CLUBS, INC.,               )   Section 1956(a)(3)(A) & (B) – Money Laundering;
16   (5) DAVID GAITHER,                  )   Title 18, United States Code, Section 641 – Theft of
     (6) RICHARD LEYLAND,               )   United States Property; Title 21, United States Code,
17   (7) EDWIN HETHERTON,                )   Section 846 – Narcotics Conspiracy; Title 18, United
     (8) PAUL FINK,                      )   States Code, Section 2 – Aiding & Abetting; Title 18,
18   (9) JOHN DAVID MCGAHA,              )   United States Code, Sections 1963, 982(a)(1), and
     (10) DOMINIC GABRIEL GRISSETT, and )   981(a)(1)(C), Title 21, United States Code, Section
19   (11) RICHARD OBRYANT BUSH,          )   853(a)(1) & (2), and Title 28, United States Code,
                                        )   Section 2461(c) – Forfeiture
20                                       )
         Defendants.                     )   SAN FRANCISCO VENUE
21                                       )
                                        )   UNDER SEAL
     _____)

22

23              F I R S T   S U P E R S E D I N G   I N D I C T M E N T

24   The Grand Jury charges:

25   COUNT ONE:  (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

26                        Introductory Allegations

27       At all times relevant to this Indictment:

28       1.       Defendant VLADIMIR HANDL was a businessman in Myrtle Beach, South Carolina,

1   with a variety of business interests, including interests in restaurants, night clubs, and personal fitness.

2   HANDL operated and controlled, among other entities, VIP Group, LLC, International VH, LLC, and

3   Heat Lounge, LLC.  Defendant MICHAEL ROSE, like HANDL, was a businessman in the Myrtle

4   Beach area, with interests in, among other things, restaurants, night clubs, and strip clubs.  ROSE was

5   the principal owner of defendant PML CLUBS, INC.  PML CLUBS, INC., was a Delaware corporation

6   with ROSE in South Carolina as its registered agent.  ROSE, through PML CLUBS, INC., owned the

7   rights to use the name "The Gold Club" in connection with the operation of strip clubs.  ROSE, through

8   PML CLUBS, INC., licensed the name "The Gold Club" to franchisees throughout the United States.

9   ROSE, through PML CLUBS, INC., also directly operated a variety of strip clubs on the East Coast of

10  the United States, including The Gold Clubs in Myrtle Beach, Hilton Head, and Wellford in South

11  Carolina, The Gold Club in Wilmington, Delaware, and The Gold Club in Bedford, New Hampshire.  In

12  addition to PML CLUBS, INC., ROSE also operated and controlled, among other entities, Explosive

13  Clubs, Inc., Nightclub and Restaurant Services, LLC, Legacy Entertainment, East Coast Restaurant &

14  Nightclubs, and Micro Management Group, LLC.

15      2.      Defendant DAVID GAITHER was an associate of MICHAEL ROSE and helped manage

16  some of ROSE's strip clubs.  Defendant PETER SCALISE was an associate of HANDL who, at one

17  time, operated a restaurant with HANDL.  SCALISE was also a brother-in-law of Edwin Hetherton,

18  with whom he engaged in fraudulent real estate transactions.

19                        The Racketeering Enterprise

20      3.      Defendants VLADIMIR HANDL, MICHAEL ROSE, PETER SCALISE, PML CLUBS,

21  INC., and DAVID GAITHER, and the entities operated and controlled by HANDL and ROSE,

22  including VIP Group, LLC, International VH, LLC, and Heat Lounge, LLC, Explosive Clubs, Inc.,

23  Nightclub and Restaurant Services, LLC, Legacy Entertainment, East Coast Restaurant & Nightclubs,

24  and Micro Management Group, LLC, together with others known and unknown, comprised the "Handl

25  Enterprise."  The Handl Enterprise, including its leadership, members, and associates, in the Northern

26  District of California and elsewhere, constituted an "enterprise" as defined in Title 18, United States

27  Code, Section 1961(4), that is, a group of individuals and entities associated in fact.  The enterprise

28  constituted an ongoing organization whose members functioned as a continuing unit for a common

1   purpose of achieving the objectives of the enterprise.  The enterprise engaged in, and its activities

2   affected, interstate and foreign commerce.

### Purposes of the Enterprise

4       4.      The purposes of the Handl Enterprise included but were not limited to the following:

5             a.      Obtaining profits and property for its members and associates through the

6   commission of criminal acts, including, but not limited to, laundering money;

7             b.      Promoting and enhancing the enterprise and the activities of its members and

8   associates;

9             c.      Providing assistance to other enterprise members and associates in order to

10   hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the

11   offenders, and successfully prosecuting and punishing the offenders.

### Means and Methods of the Enterprise

13       5.      Among the means and methods by which the members and associates of the Handl

14   Enterprise conducted and participated in the conduct of the affairs of the enterprise were the following:

15             a.      The members and associates of the Handl Enterprise sought to establish

16   relationships with individuals they believed were engaged in criminal activity in order to cultivate

17   clients for the Handl Enterprise's money laundering services.

18             b.      The members and associates of the Handl Enterprise created shell business

19   entities in order to use these entities for their money laundering activities.

20             c.      The members and associates of the Handl Enterprise created documents

21   containing false information, such as fraudulent invoices, false contracts, and other fraudulent business

22   records, in order to facilitate their money laundering activities.

23             d.      The members and associates of the Handl Enterprise used assets and property of

24   PML CLUBS, INC., and other entities operated and controlled by HANDL and ROSE in order to

25   facilitate their money laundering activities.

26             f.      The members and associates of the Handl Enterprise solicited investments from

27   individuals they believed were engaged in criminal activity.

28   //

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>The Racketeering Conspiracy</u>

6.      From at least in or about 2011, up through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

(3) PETER SCALISE,

(4) PML CLUBS, INC., and

(5) DAVID GAITHER,

and others known and unknown, being persons employed by and associated with the enterprise described above, namely, the Handl Enterprise, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, which pattern of racketeering consisted of:

a.      multiple acts indictable under Title 18, United States Code, Sections 1956 and 1344; and

b.      offenses involving dealing in a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

7.      It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

<u>COUNT TWO</u>:  (18 U.S.C. § 1962(c) – Racketeering)

8.      Paragraphs 1 through 5 of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

9.      From at least in or about 2011, up through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

1   (3) PETER SCALISE, and

2   (4) PML CLUBS, INC.,

3   and others known and unknown, being persons employed by and associated with the enterprise

4   described above, namely, the Handl Enterprise, which enterprise was engaged in, and the activities of

5   which affected, interstate and foreign commerce, unlawfully and knowingly conducted and participated,

6   directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering

7   activity, that is, through the commission of the acts of racketeering set forth in Paragraphs 10 through 12

8   of this Indictment as Racketeering Acts 1 through 118.

9                                  The Pattern of Racketeering Activity

10          10.     The pattern of racketeering activity, as defined in Title 18, United States Code, Sections

11  1961(1) and 1961(5), consisted of the following acts:

12                                  Racketeering Acts 1 Through 13

13                                       (Money Laundering)

14          11.     Defendants VLADIMIR HANDL and PETER SCALISE committed the following acts of

15  racketeering, which constitute Racketeering Acts 1 through 13:

16          a.      On or about the dates set forth in the following table, in the Northern District of

17  California and elsewhere, the defendants,

18                                     VLADIMIR HANDL and

19                                       PETER SCALISE,

20  and others known and unknown, unlawfully and knowingly, and with the intent to promote the carrying

21  on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and

22  control of property believed to be the proceeds of specified unlawful activity, to wit, concealing property

23  from a court in connection with a case under Title 11, in violation of Title 18, United States Code,

24  Section 152, conducted and attempted to conduct a financial transaction, to wit, wire transfers, involving

25  property represented to be the proceeds of specified unlawful activity, and property used to conduct and

26  facilitate specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(3)(A)

27  & (B) and 2, as described in the following table:

28  //

5

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 1 | January 17, 2012 | Wire Transfer | $13,500 |
| 2 | January 23, 2012 | Wire Transfer | $22,500 |
| 3 | January 30, 2012 | Wire Transfer | $22,500 |
| 4 | February 6, 2012 | Wire Transfer | $22,500 |
| 5 | February 13, 2012 | Wire Transfer | $22,500 |
| 6 | February 21, 2012 | Wire Transfer | $22,500 |
| 7 | February 27, 2012 | Wire Transfer | $22,500 |
| 8 | March 5, 2012 | Wire Transfer | $22,500 |
| 9 | March 12, 2012 | Wire Transfer | $22,500 |
| 10 | March 19, 2012 | Wire Transfer | $22,500 |
| 11 | March 26, 2012 | Wire Transfer | $22,500 |
| 12 | April 3, 2012 | Wire Transfer | $22,500 |
| 13 | April 9, 2012 | Wire Transfer | $9,000 |

<u>Racketeering Acts 14 Through 118</u>

(Money Laundering)

12.     Defendants VLADIMIR HANDL, MICHAEL ROSE, PETER SCALISE, and PML CLUBS, INC., committed the following acts of racketeering, which constitute Racketeering Acts 14 through 118:

a.     On or about the dates set forth in the following table, in the Northern District of California and elsewhere, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

(3) PETER SCALISE, and

(4) PML CLUBS, INC.,

and others known and unknown, unlawfully and knowingly, and with the intent to conceal and disguise

the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to wit, distribution of a controlled substance and possession of a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to distribute a controlled substance and to possess a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 846, conducted and attempted to conduct a financial transaction, to wit, transfers of checks that were subsequently negotiated and wire transfers, involving property represented to be the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2, as described in the following table:

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 14 | June 7, 2012 | Transfer of Check | $27,500 |
| 15 | June 11, 2012 | Transfer of Check | $25,000 |
| 16 | June 14, 2012 | Transfer of Check | $23,975 |
| 17 | June 15, 2012 | Transfer of Check | $13,525 |
| 18 | June 25, 2012 | Transfer of Check | $21,140 |
| 19 | June 28, 2012 | Transfer of Check | $26,850 |
| 20 | July 3, 2012 | Transfer of Check | $18,950 |
| 21 | July 11, 2012 | Transfer of Check | $20,050 |
| 22 | July 16, 2012 | Transfer of Check | $12,050 |
| 23 | July 16, 2012 | Transfer of Check | $13,400 |
| 24 | July 26, 2012 | Transfer of Check | $22,560 |
| 25 | July 22, 2012 | Transfer of Check | $24,750 |
| 26 | July 25, 2012 | Transfer of Check | $19,500 |
| 27 | July 25,2012 | Transfer of Check | $19,400 |
| 28 | July 27, 2012 | Transfer of Check | $8,060 |
| 29 | July 30, 2012 | Transfer of Check | $5,500 |
| 30 | August 2, 2012 | Transfer of Check | $11,520 |

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 31 | August 5, 2012 | Transfer of Check | $14,380 |
| 32 | August 10, 2012 | Transfer of Check | $8,050 |
| 33 | August 13, 2012 | Transfer of Check | $9,024 |
| 34 | August 15, 2012 | Transfer of Check | $14,816 |
| 35 | August 22, 2012 | Transfer of Check | $14,424 |
| 36 | August 27, 2012 | Transfer of Check | $18,900 |
| 37 | August 31, 2012 | Transfer of Check | $23,700 |
| 38 | September 4, 2012 | Transfer of Check | $9,000 |
| 39 | September 7, 2012 | Transfer of Check | $18,600 |
| 40 | September 10, 2012 | Transfer of Check | $9,000 |
| 41 | September 17, 2012 | Transfer of Check | $18,720 |
| 42 | September 20, 2012 | Transfer of Check | $15,800 |
| 43 | September 21, 2012 | Transfer of Check | $9,000 |
| 44 | September 24, 2012 | Transfer of Check | $16,400 |
| 45 | September 24, 2012 | Transfer of Check | $8,500 |
| 46 | September 28, 2012 | Transfer of Check | $18,044 |
| 47 | October 4, 2012 | Transfer of Check | $18,000 |
| 48 | October 8, 2012 | Transfer of Check | $19,750 |
| 49 | October 13, 2012 | Transfer of Check | $29,400 |
| 50 | October 19, 2012 | Transfer of Check | $9,000 |
| 51 | October 22, 2012 | Transfer of Check | $20,400 |
| 52 | October 25, 2012 | Transfer of Check | $10,200 |
| 53 | October 30, 2012 | Transfer of Check | $14,125 |
| 54 | November 5, 2012 | Transfer of Check | $14,125 |
| 55 | November 9, 2012 | Transfer of Check | $24,000 |

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 56 | November 16, 2012 | Transfer of Check | $22,500 |
| 57 | November 26, 2012 | Transfer of Check | $21,800 |
| 58 | November 29, 2012 | Transfer of Check | $18,500 |
| 59 | December 4, 2012 | Transfer of Check | $34,075 |
| 60 | December 5, 2012 | Transfer of Check | $14,125 |
| 61 | December 12, 2012 | Transfer of Check | $25,640 |
| 62 | December 24, 2012 | Transfer of Check | $24,450 |
| 63 | December 28, 2012 | Transfer of Check | $26,850 |
| 64 | December 31, 2012 | Transfer of Check | $27,225 |
| 65 | January 2, 2013 | Transfer of Check | $16,850 |
| 66 | January 18, 2013 | Transfer of Check | $2,850 |
| 67 | January 28, 2013 | Transfer of Check | $2,850 |
| 68 | February 4, 2013 | Transfer of Check | $8,285 |
| 69 | February 8, 2013 | Transfer of Check | $35,550 |
| 70 | February 8, 2013 | Transfer of Check | $7,500 |
| 71 | February 11, 2013 | Transfer of Check | $25,000 |
| 72 | February 11, 2013 | Transfer of Check | $19,500 |
| 73 | February 11, 2013 | Transfer of Check | $43,500 |
| 74 | February 12, 2013 | Transfer of Check | $15,750 |
| 75 | February 15, 2013 | Transfer of Check | $7,750 |
| 76 | February 20, 2013 | Transfer of Check | $28,450 |
| 77 | March 22, 2013 | Transfer of Check | $5,850 |
| 78 | April 10, 2013 | Transfer of Check | $1,150 |
| 79 | June 24, 2014 | Transfer of Check | $20,000 |
| 80 | June 30, 2014 | Transfer of Check | $15,500 |

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 81 | July 1, 2014 | Transfer of Check | $25,000 |
| 82 | July 7, 2014 | Transfer of Check | $25,000 |
| 83 | July 7, 2014 | Transfer of Check | $21,000 |
| 84 | July 7, 2014 | Transfer of Check | $35,000 |
| 85 | July 8, 2014 | Transfer of Check | $25,000 |
| 86 | July 10, 2014 | Transfer of Check | $25,000 |
| 87 | July 14, 2014 | Wire Transfer | $23,500 |
| 88 | July 14, 2014 | Transfer of Check | $35,000 |
| 89 | July 15, 2014 | Transfer of Check | $16,000 |
| 90 | July 21, 2014 | Transfer of Check | $39,250 |
| 91 | July 22, 2014 | Transfer of Check | $25,000 |
| 92 | July 23, 2014 | Transfer of Check | $25,000 |
| 93 | July 28, 2014 | Transfer of Check | $25,000 |
| 94 | July 28, 2014 | Transfer of Check | $25,750 |
| 95 | August 4, 2014 | Transfer of Check | $35,000 |
| 96 | August 4, 2014 | Transfer of Check | $23,500 |
| 97 | August 12, 2014 | Transfer of Check | $30,000 |
| 98 | August 15, 2014 | Transfer of Check | $25,000 |
| 99 | August 15, 2014 | Transfer of Check | $30,000 |
| 100 | August 17, 2014 | Transfer of Check | $16,500 |
| 101 | August 20, 2014 | Transfer of Check | $30,000 |
| 102 | August 21, 2014 | Transfer of Check | $25,000 |
| 103 | August 25, 2014 | Transfer of Check | $31.250 |
| 104 | August 26, 2014 | Wire Transfer | $20,000 |
| 105 | September 12, 2014 | Transfer of Check | $40,000 |

| Racketeering Act | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 106 | September 13, 2014 | Transfer of Check | $10,000 |
| 107 | September 15, 2014 | Transfer of Check | $25,000 |
| 108 | September 16, 2014 | Transfer of Check | $20,000 |
| 109 | September 19, 2014 | Transfer of Check | $30,000 |
| 110 | September 25, 2014 | Transfer of Check | $15,000 |
| 111 | September 28, 2014 | Transfer of Check | $10,000 |
| 112 | September 29, 2014 | Transfer of Check | $20,000 |
| 113 | September 29, 2014 | Transfer of Check | $20,000 |
| 114 | October 3, 2014 | Transfer of Check | $17,500 |
| 115 | October 15, 2014 | Transfer of Check | $10,000 |
| 116 | December 1, 2014 | Transfer of Check | $3,250 |
| 117 | December 12, 2014 | Transfer of Check | $5,000 |
| 118 | December 31, 2014 | Transfer of Check | $5,000 |

All in violation of Title 18, United States Code, Section 1962(c).

COUNT THREE:  (18 U.S.C. § 1956(h) – Money Laundering Conspiracy)

13.    Paragraphs 1 through 4 of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

14.    From at least in or about 2011, up through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

(3) PETER SCALISE,

(4) PML CLUBS, INC., and

(5) DAVID GAITHER,

and others known and unknown, unlawfully and knowingly combined, conspired, confederated, and

1  agreed together and with each other to violate Title 18, United States Code, Section 1956(a)(3)(A) &
2  (B).
3      15.    It was a part and an object of the conspiracy that the defendants,
4                  (1) VLADIMIR HANDL,
5                  (2) MICHAEL ROSE,
6                  (3) PETER SCALISE,
7              (4) PML CLUBS, INC., and
8                  (5) DAVID GAITHER,
9  and others known and unknown, with the intent to promote the carrying on of specified unlawful activity
10  and to conceal and disguise the nature, location, source, ownership, and control of property believed to
11  be the proceeds of specified unlawful activity, to wit, concealing property from a court in connection
12  with a case under Title 11, in violation of Title 18, United States Code, Section 152, distribution of a
13  controlled substance and possession of a controlled substance with intent to distribute, in violation of
14  Title 21, United States Code, Section 841(a)(1), and conspiracy to distribute a controlled substance and
15  to possess a controlled substance with intent to distribute, in violation of Title 21, United States Code,
16  Section 846, unlawfully and knowingly would and did conduct and attempt to conduct a financial
17  transaction involving property represented to be the proceeds of specified unlawful activity, and
18  property used to conduct and facilitate specified unlawful activity, in violation of Title 18, United States
19  Code, Section 1956(a)(3)(A) & (B).
20      All in violation of Title 18, United States Code, Section 1956(h).
21  COUNTS FOUR THROUGH SIXTEEN:  (18 U.S.C. §§ 1956(a)(3)(A) & (B) and 2 – Money
22  Laundering)
23      16.    On or about the dates set forth in the following table, in the Northern District of
24  California and elsewhere, the defendants,
25              VLADIMIR HANDL and
26                  PETER SCALISE,
27  and others known and unknown, unlawfully and knowingly, and with the intent to promote the carrying
28  on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and

12

control of property believed to be the proceeds of specified unlawful activity, to wit, concealing property from a court in connection with a case under Title 11, in violation of Title 18, United States Code, Section 152, conducted and attempted to conduct a financial transaction, to wit, wire transfers, involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, as described in the following table:

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|-------|-------------------------------|-------------------------------|---------------------------------|
| 4 | January 17, 2012 | Wire Transfer | $13,500 |
| 5 | January 23, 2012 | Wire Transfer | $22,500 |
| 6 | January 30, 2012 | Wire Transfer | $22,500 |
| 7 | February 6, 2012 | Wire Transfer | $22,500 |
| 8 | February 13, 2012 | Wire Transfer | $22,500 |
| 9 | February 21, 2012 | Wire Transfer | $22,500 |
| 10 | February 27, 2012 | Wire Transfer | $22,500 |
| 11 | March 5, 2012 | Wire Transfer | $22,500 |
| 12 | March 12, 2012 | Wire Transfer | $22,500 |
| 13 | March 19, 2012 | Wire Transfer | $22,500 |
| 14 | March 26, 2012 | Wire Transfer | $22,500 |
| 15 | April 3, 2012 | Wire Transfer | $22,500 |
| 16 | April 9, 2012 | Wire Transfer | $9,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) & (B) and 2.

COUNTS SEVENTEEN THROUGH ONE HUNDRED TWENTY-ONE: (18 U.S.C. §§ 1956(a)(3)(B) and 2 – Money Laundering)

17.     On or about the dates set forth in the following table, in the Northern District of California and elsewhere, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

1                                (3) PETER SCALISE, and

2                                (4) PML CLUBS, INC.,

and others known and unknown, unlawfully and knowingly, and with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to wit, distribution of a controlled substance and possession of a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to distribute a controlled substance and to possess a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 846, conducted and attempted to conduct a financial transaction, to wit, transfers of checks that were subsequently negotiated and wire transfers, involving property represented to be the proceeds of specified unlawful activity, as described in the following table:

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 17 | June 7, 2012 | Transfer of Check | $27,500 |
| 18 | June 11, 2012 | Transfer of Check | $25,000 |
| 19 | June 14, 2012 | Transfer of Check | $23,975 |
| 20 | June 15, 2012 | Transfer of Check | $13,525 |
| 21 | June 25, 2012 | Transfer of Check | $21,140 |
| 22 | June 28, 2012 | Transfer of Check | $26,850 |
| 23 | July 3, 2012 | Transfer of Check | $18,950 |
| 24 | July 11, 2012 | Transfer of Check | $20,050 |
| 25 | July 16, 2012 | Transfer of Check | $12,050 |
| 26 | July 16, 2012 | Transfer of Check | $13,400 |
| 27 | July 26, 2012 | Transfer of Check | $22,560 |
| 28 | July 22, 2012 | Transfer of Check | $24,750 |
| 29 | July 25, 2012 | Transfer of Check | $19,500 |
| 30 | July 25,2012 | Transfer of Check | $19,400 |

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 31 | July 27, 2012 | Transfer of Check | $8,060 |
| 32 | July 30, 2012 | Transfer of Check | $5,500 |
| 33 | August 2, 2012 | Transfer of Check | $11,520 |
| 34 | August 5, 2012 | Transfer of Check | $14,380 |
| 35 | August 10, 2012 | Transfer of Check | $8,050 |
| 36 | August 13, 2012 | Transfer of Check | $9,024 |
| 37 | August 15, 2012 | Transfer of Check | $14,816 |
| 38 | August 22, 2012 | Transfer of Check | $14,424 |
| 39 | August 27, 2012 | Transfer of Check | $18,900 |
| 40 | August 31, 2012 | Transfer of Check | $23,700 |
| 41 | September 4, 2012 | Transfer of Check | $9,000 |
| 42 | September 7, 2012 | Transfer of Check | $18,600 |
| 43 | September 10, 2012 | Transfer of Check | $9,000 |
| 44 | September 17, 2012 | Transfer of Check | $18,720 |
| 45 | September 20, 2012 | Transfer of Check | $15,800 |
| 46 | September 21, 2012 | Transfer of Check | $9,000 |
| 47 | September 24, 2012 | Transfer of Check | $16,400 |
| 48 | September 24, 2012 | Transfer of Check | $8,500 |
| 49 | September 28, 2012 | Transfer of Check | $18,044 |
| 50 | October 4, 2012 | Transfer of Check | $18,000 |
| 51 | October 8, 2012 | Transfer of Check | $19,750 |
| 52 | October 13, 2012 | Transfer of Check | $29,400 |
| 53 | October 19, 2012 | Transfer of Check | $9,000 |
| 54 | October 22, 2012 | Transfer of Check | $20,400 |
| 55 | October 25, 2012 | Transfer of Check | $10,200 |

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 56 | October 30, 2012 | Transfer of Check | $14,125 |
| 57 | November 5, 2012 | Transfer of Check | $14,125 |
| 58 | November 9, 2012 | Transfer of Check | $24,000 |
| 59 | November 16, 2012 | Transfer of Check | $22,500 |
| 60 | November 26, 2012 | Transfer of Check | $21,800 |
| 61 | November 29, 2012 | Transfer of Check | $18,500 |
| 62 | December 4, 2012 | Transfer of Check | $34,075 |
| 63 | December 5, 2012 | Transfer of Check | $14,125 |
| 64 | December 12, 2012 | Transfer of Check | $25,640 |
| 65 | December 24, 2012 | Transfer of Check | $24,450 |
| 66 | December 28, 2012 | Transfer of Check | $26,850 |
| 67 | December 31, 2012 | Transfer of Check | $27,225 |
| 68 | January 2, 2013 | Transfer of Check | $16,850 |
| 69 | January 18, 2013 | Transfer of Check | $2,850 |
| 70 | January 28, 2013 | Transfer of Check | $2,850 |
| 71 | February 4, 2013 | Transfer of Check | $8,285 |
| 72 | February 8, 2013 | Transfer of Check | $35,550 |
| 73 | February 8, 2013 | Transfer of Check | $7,500 |
| 74 | February 11, 2013 | Transfer of Check | $25,000 |
| 75 | February 11, 2013 | Transfer of Check | $19,500 |
| 76 | February 11, 2013 | Transfer of Check | $43,500 |
| 77 | February 12, 2013 | Transfer of Check | $15,750 |
| 78 | February 15, 2013 | Transfer of Check | $7,750 |
| 79 | February 20, 2013 | Transfer of Check | $28,450 |
| 80 | March 22, 2013 | Transfer of Check | $5,850 |

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 81 | April 10, 2013 | Transfer of Check | $1,150 |
| 82 | June 24, 2014 | Transfer of Check | $20,000 |
| 83 | June 30, 2014 | Transfer of Check | $15,500 |
| 84 | July 1, 2014 | Transfer of Check | $25,000 |
| 85 | July 7, 2014 | Transfer of Check | $25,000 |
| 86 | July 7, 2014 | Transfer of Check | $21,000 |
| 87 | July 7, 2014 | Transfer of Check | $35,000 |
| 88 | July 8, 2014 | Transfer of Check | $25,000 |
| 89 | July 10, 2014 | Transfer of Check | $25,000 |
| 90 | July 14, 2014 | Wire Transfer | $23,500 |
| 91 | July 14, 2014 | Transfer of Check | $35,000 |
| 92 | July 15, 2014 | Transfer of Check | $16,000 |
| 93 | July 21, 2014 | Transfer of Check | $39,250 |
| 94 | July 22, 2014 | Transfer of Check | $25,000 |
| 95 | July 23, 2014 | Transfer of Check | $25,000 |
| 96 | July 28, 2014 | Transfer of Check | $25,000 |
| 97 | July 28, 2014 | Transfer of Check | $25,750 |
| 98 | August 4, 2014 | Transfer of Check | $35,000 |
| 99 | August 4, 2014 | Transfer of Check | $23,500 |
| 100 | August 12, 2014 | Transfer of Check | $30,000 |
| 101 | August 15, 2014 | Transfer of Check | $25,000 |
| 102 | August 15, 2014 | Transfer of Check | $30,000 |
| 103 | August 17, 2014 | Transfer of Check | $16,500 |
| 104 | August 20, 2014 | Transfer of Check | $30,000 |
| 105 | August 21, 2014 | Transfer of Check | $25,000 |

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 106 | August 25, 2014 | Transfer of Check | $31.250 |
| 107 | August 26, 2014 | Wire Transfer | $20,000 |
| 108 | September 12, 2014 | Transfer of Check | $40,000 |
| 109 | September 13, 2014 | Transfer of Check | $10,000 |
| 110 | September 15, 2014 | Transfer of Check | $25,000 |
| 111 | September 16, 2014 | Transfer of Check | $20,000 |
| 112 | September 19, 2014 | Transfer of Check | $30,000 |
| 113 | September 25, 2014 | Transfer of Check | $15,000 |
| 114 | September 28, 2014 | Transfer of Check | $10,000 |
| 115 | September 29, 2014 | Transfer of Check | $20,000 |
| 116 | September 29, 2014 | Transfer of Check | $20,000 |
| 117 | October 3, 2014 | Transfer of Check | $17,500 |
| 118 | October 15, 2014 | Transfer of Check | $10,000 |
| 119 | December 1, 2014 | Transfer of Check | $3,250 |
| 120 | December 12, 2014 | Transfer of Check | $5,000 |
| 121 | December 31, 2014 | Transfer of Check | $5,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

COUNT ONE HUNDRED TWENTY-TWO:  (18 U.S.C. § 1956(h) – Money Laundering Conspiracy)

18.     From at least in or about 2010, up through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

RICHARD LEYLAND and

EDWIN HETHERTON,

and others known and unknown, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1956(a)(3)(A) & (B).

19.     It was a part and an object of the conspiracy that the defendants,

RICHARD LEYLAND and

EDWIN HETHERTON,

and others known and unknown, with the intent to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to wit, concealing property from a court in connection with a case under Title 11, in violation of Title 18, United States Code, Section 152, unlawfully and knowingly would and did conduct and attempt to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A) & (B).

All in violation of Title 18, United States Code, Section 1956(h).

COUNTS ONE HUNDRED TWENTY-THREE THROUGH ONE HUNDRED TWENTY-FIVE:  (18 U.S.C. §§ 1956(a)(3)(A) & (B) and 2 – Money Laundering)

20.     On or about the dates set forth in the following table, in the Northern District of California and elsewhere, the defendant,

EDWIN HETHERTON,

and others known and unknown, unlawfully and knowingly, and with the intent to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, to wit, concealing property from a court in connection with a case under Title 11, in violation of Title 18, United States Code, Section 152, conducted and attempted to conduct a financial transaction, to wit, wire transfers, involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, as described in the following table:

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|---|---|---|---|
| 123 | March 2, 2010 | Wire Transfer | $45,750 |
| 124 | March 4, 2010 | Wire Transfer | $40,000 |
| 125 | March 12, 2010 | Wire Transfer | $35,000 |

1   All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) & (B) and 2.

2   COUNTS ONE HUNDRED TWENTY-SIX THROUGH ONE HUNDRED TWENTY-NINE:  (18

3   U.S.C. §§ 1956(a)(3)(A) & (B) and 2 – Money Laundering)

4        21.     On or about the dates set forth in the following table, in the Northern District of

5   California and elsewhere, the defendant,

6                    RICHARD LEYLAND,

7   and others known and unknown, unlawfully and knowingly, and with the intent to promote the carrying

8   on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and

9   control of property believed to be the proceeds of specified unlawful activity, to wit, concealing property

10  from a court in connection with a case under Title 11, in violation of Title 18, United States Code,

11  Section 152, conducted and attempted to conduct a financial transaction, to wit, wire transfers, involving

12  property represented to be the proceeds of specified unlawful activity, and property used to conduct and

13  facilitate specified unlawful activity, as described in the following table:

| Count | Date of Financial Transaction | Type of Financial Transaction | Amount of Financial Transaction |
|-------|------------------------------|-------------------------------|---------------------------------|
| 126 | September 27, 2010 | Wire Transfer | $48,000 |
| 127 | October 4, 2010 | Wire Transfer | $52,000 |
| 128 | October 13, 2010 | Wire Transfer | $65,000 |
| 129 | December 22, 2010 | Wire Transfer | $20,000 |

21       All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) & (B) and 2.

22  COUNT ONE HUNDRED THIRTY:  (18 U.S.C. §§ 641 and 2 – Theft of United States Property)

23       22.     From at least in or about early 2010, up through and including in or about July 2011, in

24  the Northern District of California and elsewhere, the defendant,

25                  EDWIN HETHERTON,

26  and others known and unknown, unlawfully and knowingly embezzled, stole, purloined, and knowingly

27  converted to his use and the use of another money of the United States and a department and agency

28  thereof, to wit, HETHERTON stole approximately $29,000 of undercover money of the United States.

1   All in violation of Title 18, United States Code, Sections 641 and 2.

2   COUNT ONE HUNDRED THIRTY-ONE:  (18 U.S.C. §§ 641 and 2 – Theft of United States Property)

3   23.   From at least in or about early September 2010, up through and including on or about

4   October 22, 2010, in the Northern District of California and elsewhere, the defendant,

5   RICHARD LEYLAND,

6   and others known and unknown, unlawfully and knowingly embezzled, stole, purloined, and knowingly

7   converted to his use and the use of another money of the United States and a department and agency

8   thereof, to wit, HETHERTON stole approximately $60,000 of undercover money of the United States.

9   All in violation of Title 18, United States Code, Sections 641 and 2.

10  COUNT ONE HUNDRED THIRTY-TWO:  (21 U.S.C. § 846 – Conspiracy to Distribute a Controlled

11  Substance/Possess a Controlled Substance with Intent to Distribute)

12  24.   From at least in or about March 2014, up through and including the date of this

13  Indictment, in the Northern District of California and elsewhere, the defendants,

14  (1) VLADIMIR HANDL,

15  (2) MICHAEL ROSE,

16  (5) DAVID GAITHER,

17  (8) PAUL FINK,

18  (9) JOHN DAVID MCGAHA,

19  (10) DOMINIC GABRIEL GRISSETT, and

20  (11) RICHARD OBRYANT BUSH,

21  and others known and unknown, unlawfully, knowingly, and intentionally combined, conspired,

22  confederated, and agreed together and with each other to distribute a controlled substance and to possess

23  a controlled substance with intent to distribute, to wit, 5 kilograms and more of mixtures and substances

24  containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections

25  841(a)(1) and (b)(1)(A).

26  All in violation of Title 21, United States Code, Section 846.

27  FORFEITURE ALLEGATIONS:  (18 U.S.C. § 1963 – Proceeds and Property Involved in Racketeering;

28  18 U.S.C. § 982(a)(1) – Proceeds and Property Involved in Money Laundering; 18 U.S.C. §

21

1  981(a)(1)(C) and 28 U.S.C. § 2461(c) – Proceeds and Property Derived from Theft of United States

2  Property; and 21 U.S.C. § 853(a)(1) & (2) – Proceeds and Property Derived from Narcotics Offenses)

3       25.     Counts One and Two of this Indictment are realleged, repeated, and incorporated by

4  reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions

5  of Title 18, United States Code, Section 1963.

6       26.     Upon conviction of any one of the offenses alleged in Count One and Count Two, the

7  defendants,

8               (1) VLADIMIR HANDL,

9               (2) MICHAEL ROSE,

10               (3) PETER SCALISE,

11               (4) PML CLUBS, INC., and

12               (5) DAVID GAITHER,

13  shall, pursuant to Title 18, United States Code, Section 1963, forfeit to the United States of America:

14       a.     Any interest acquired and maintained in violation of section 1962;

15       b.     Any interest in, security of, claim against, and property and contractual right of

16  any kind affording a source of influence over, any enterprise which the defendants established, operated,

17  controlled, conducted, and participated in the conduct of, in violation of section 1962; and

18       c.     Any property constituting, and derived from, any proceeds obtained, directly and

19  indirectly, from racketeering activity and unlawful debt collection in violation of 1962.

20       27.     Counts Three to One Hundred Twenty-Nine of this Indictment are realleged, repeated,

21  and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture

22  pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

23       28.     Upon conviction of any one of the offenses alleged in Count Three to Count One

24  Hundred Twenty-Nine of this Indictment, the defendants,

25               (1) VLADIMIR HANDL,

26               (2) MICHAEL ROSE,

27                (3) PETER SCALISE,

28               (4) PML CLUBS, INC.,

(5) DAVID GAITHER,

(6) EDWIN HETHERTON, and

(7) RICHARD LEYLAND,

shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States any property, real and personal, involved in said violations, and any property traceable to such property.

29.     Counts One Hundred Thirty to One Hundred Thirty-One of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

30.     Upon conviction of any one of the offenses alleged in Counts One Hundred Thirty and One Hundred Thirty-One of this Indictment, the defendants,

RICHARD LEYLAND and

EDWIN HETHERTON

shall, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), forfeit to the United States any property, real and personal, which constitutes or is derived from proceeds traceable to said violations, and a conspiracy to commit said violations.

31.     Count One Hundred Thirty-Two of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853(a)(1) & (2).

32.     Upon conviction of the offense alleged in Count One Hundred Thirty-Two of this Indictment, the defendants,

(1) VLADIMIR HANDL,

(2) MICHAEL ROSE,

(5) DAVID GAITHER,

(8) PAUL FINK,

(9) JOHN DAVID MCGAHA,

(10) DOMINIC GABRIEL GRISSETT, and

(11) RICHARD OBRYANT BUSH,

23

1   shall, pursuant to Title 21, United States Code, Section 853(a)(1) & (2), forfeit to the United States all

2   right, title, and interest in property constituting and derived from any proceeds defendants obtained,

3   directly and indirectly, as a result of said violations, and any property used, and intended to be used, in

4   any manner and part, to commit, or to facilitate the commission of the said violations, and any property

5   traceable to such property, including but not limited to:

6           a.      One guyed tower located at the end of N. Mill Creek Road, Quincy, California

7                   95971, FCC Registration Number 1243951, File Number A0383054,

8                   Latitude/Longitude 39-56-40.6N, 120-53-56.8W;

9           b.      One guyed tower located at the end of N. Mill Creek Road, Quincy, California

10                  95971, FCC Registration Number 1243953, File Number A0383071,

11                  Latitude/Longitude 39-56-41.6N, 120-53-58.8W; and

12          c.      One guyed tower located at the end of N. Mill Creek Road, Quincy, California

13                  95971, FCC Registration Number 1243954, File Number A0383076,

14                  Latitude/Longitude 39-56-42.6N, 120-53-57.8W.

15          d.      Two shelters located at the end of N. Mill Creek Road, Quincy, California 95971.

16          e.      One generator located at the end of N. Mill Creek Road, Quincy, California

17                  95971.

18          f.      51% ownership of Young Millionaires Team, LLC.

19      33.     If any of the property described above, as a result of any act or omission of the

20   defendants:

21          a.      Cannot be located upon the exercise of due diligence;

22          b.      Has been transferred or sold to, or deposited with, a third party;

23          c.      Has been placed beyond the jurisdiction of the court;

24          d.      Has been substantially diminished in value; or

25          e.      Has been commingled with other property which cannot be divided without

26   difficulty,

27   the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 18,

28   United States Code, Sections 982(b)(1) and 1963(m), and Title 21, United States Code, Section 853(p).

1    All pursuant to Title 18, United States Code, Sections 1963, 982(a)(1), and 981(a)(1)(C), Title

2    21, United States Code, Section 853(a)(1) & (2), and Title 28, United States Code, Section 2461(c).

3

4    DATED:                                    A TRUE BILL.

5

6    3/24/15

7                                             FOREPERSON

8    MELINDA HAAG
     United States Attorney

9

10   DAVID R. CALLAWAY

11   Chief, Criminal Division

12

13   (Approved as to form:

14   W.S. WILSON LEUNG
     DAVID B. COUNTRYMAN

15   Assistant United States Attorneys

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**SHAWNDALE TYRONE BOYD AND DAMION SLEUGH,**<br><br>　　　　　Defendants. | Case No.  14-cr-00168-YGR<br><br>**ORDER ON MOTION TO DISMISS; MOTION TO SEVER** |

The United States of American brings this criminal action against Defendants Shawndale Tyrone Boyd ("Boyd") and Damian Sleugh ("Sleugh") (collectively, "defendants") charging defendants with:  conspiracy to distribute marijuana (Count One), attempting to possess with the intent to distribute marijuana (Count Two); committing robbery that affects interstate commerce (Count Three); using, carrying, brandishing and discharging a firearm during and in relation to a drug crime and crime of violence (Count Four); and causing a death during the course of the crimes charged in counts 1 through 3 (Count Five).  The indictment also charges Mr. Sleugh only with unlawfully possessing a firearm (Count Six).

Defendant Boyd has filed a motion to dismiss count one of the indictment, conspiracy to distribute marijuana on the grounds that the indictment did not contain an adequate statement of the facts underlying the charge, in which defendant Sleugh has joined.  (Dkt. No. 65 ("MTD"); Dkt. No. 66.)  Defendant Boyd has also filed a motion for severance on the grounds that his codefendant, Sleugh, made statements in recorded telephonic conversation concerning a "robbery gone bad" and that he told Boyd that they should stay away from one another.  (Dkt. No. 64 ("MTS"); Dkt. No. 70 ("Reply to MTS").)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the motion to dismiss and **DENIES** the motion to sever.

## MOTION TO DISMISS

At issue in Boyd's motion to dismiss is the sufficiency of Count One of the indictment. In that count, the government charges both Boyd and Sleugh with conspiring to distribute marijuana (Count One). Count One alleges the following:

> Between a date unknown to the Grand Jury and continuing up to at least on or about December 22, 2013, in the Northern District of California, the defendants, Shawndale Tyrone Boyd and Damion Sleugh, unlawfully, knowingly, and intentionally conspired to distribute and possess with intent to distribute a Schedule 1 controlled substance, to wit, mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(D). All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(D).

Boyd contends that the conspiracy alleged in Count One thus does not include a start date or a certain end date, nor does it allege any overt acts. (MTD at 4.)

### 1. Legal Standard

Federal Rule of Criminal Procedure 7(c) sets forth the requirements for what must be contained in an indictment.

> **(1) In General.** The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that[*] section 3282.
> **(2) Citation Error.** Unless the defendant was misled and thereby

2

prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.

Fed. R. Crim. P. 7.

An indictment is typically sufficient if it sets forth the elements of the charged offenses. *United States v. Fernandez*, 388 F.3d 1199, 1217–20 (9th Cir. 2004). In considering a motion to dismiss an indictment, the Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment is sufficient to withstand a defendant's motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted). The Ninth Circuit has instructed that an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (citing *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)).

### 2. Analysis

Here, the Court finds that the indictment provides sufficient clarity to protect Boyd's rights. Count One of the indictment itself provides clarity of what exactly the conspiracy allegedly concerned and the end date (December 22, 2013),[1] it identifies by name specifically the co-conspirators, and it includes the type of the drug at issue. In light of the fact that Count One of

---

[1] Defendant's contention that the phrase "up to at least on or about December 22, 2013" is not sufficiently limiting is unpersuasive. Unlike the phrasing "until on or after," *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979), or "including on or about," *United States v. Laykin*, 886 F.2d 1534 (9th Cir. 1989), here the inclusion of a specific date, coupled with the phrase "at least on or about" sets a reasonable timeframe and provides sufficient parameters on the conspiracy alleged. Reading Count One as a whole, it is apparent that the conspiracy concluded at or near December 22, 2013 even if defendants may have engaged in certain alleged actions to cover-up the same later. Count One cannot be fairly construed as unbounded in time. The limited nature of the phrase "up to at least on or about December 22, 2013" is made all the more apparent upon reading the indictment as a whole, which is concerned with an alleged drug deal/robbery gone bad on December 22, 2013.

United States District Court
Northern District of California

the indictment is tied expressly to a precise date, December 22, 2013, and that the events that allegedly occurred on that date are no mystery to defendants, the Court finds that Count One provides sufficient clarity enable defendants to prepare a defense and avoid double jeopardy.

Furthermore, the additional counts further reinforce that Count One is directed to a conspiracy to distribute marijuana relating to, and culminating in, the alleged robbery and killing. Reading the whole document with a view toward common sense, it is clear that Count One is directed to the conspiracy between the two defendants to engage in the sale of marijuana on or about December 22, 2013.

Defendant's reliance on *United States v. Rodriguez-Gonzales*, 358 F.3d 1156, 1159 (9th Cir. 2004) is unpersuasive. There, the government was attempting to increase one count in the indictment from a misdemeanor to a felony—to alter substantively the nature of the crime charged and the consequences of a conviction—where that count in the indictment did not sufficiently provide notice that the charge could be a felony. The indictment did not make clear that a conviction on one charge would elevate a second charge to a felony, putting defendant at an obvious disadvantage in terms of notice and defense preparation. That is not the case here, where the events underlying the indictment in total, and as stated in Count One specifically, are well-understood by all parties.

So, too, is defendant's reliance on *United States v. Cooper*, No. CR 09–00156 SI, No. CR 13–00693 SI, 2014 WL 3784344 (N.D. Cal. 2014) unpersuasive. There, the indictment lacked sufficient detail regarding when the conspiracy took place because the time frame was open ended in both directions, the identity of the co-conspirators was not included, and facts regarding what they were alleged to have done. *Cooper*, 2014 WL at *4. Although defendants suggest that the lack of a clear end date was a sufficient reason for the court in *Cooper* to find the indictment lacking, the Court has reviewed this case and finds that there, the indictment's many deficiencies, particularly the lack of any identified co-conspirators, in conjunction, combined with the Government's failure to remedy any of these deficiencies when filing a second superseding indictment, formed the basis for the ultimate dismissal of the count at issue. Those circumstances are not present here. As set forth above, the alleged co-conspirators are identified by name, a date

4

United States District Court
Northern District of California

certain is identified, and the count read in the context of the entire indictment makes clear that defendants' alleged conspiracy concerned the sale of marijuana that took place on or about December 22, 2013. There can be no argument that defendant has not been provided an opportunity to prepare a defense, or that he will be subject to double jeopardy.

Finally, defendants' argument that an overt act need be alleged in Count One does not persuade. Indeed, in what appears to be a concession, defendant does not argue the point further in his reply briefing. (*See generally*, Dkt. No. 71.) Regardless, proof of an overt act is not required to establish a violation of 21 U.S.C. § 846. *United States v. Shabani*, 513 U.S. 10, 17 (1994). And for the reasons set forth above, the Court finds that Count One is sufficiently definite. The motion to dismiss is **DENIED**.

### MOTION TO SEVER

At issue in Boyd's motion to sever is his contention that his defense will be incompatible with what he infers will be Sleugh's defense, and that Sleugh's statements to his girlfriend made while he was incarcerated present a *Bruton* issue. The Court first reviews the relevant legal standards on motions to sever, and then considers the specific theories offered by Boyd in turn.

### 1. Legal Standard for Motion to Sever

Under Federal Rule of Criminal Procedure 8(b), "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." When defendants are indicted together, the federal system evinces a preference for joint trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Lane*, 474 U.S. 438, 449 (1986) (recognizing that joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial") (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). Only where joinder would create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" must the Court grant severance. *Zafiro*, 506 U.S. at 539. Neither a joint trial with more culpable codefendants nor an improved possibility of acquittal in a separate trial is sufficient by itself to warrant severance. *Fernandez*,

388 F.3d at 1241 (citing *United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)).  A joint trial is "particularly appropriate where co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *Fernandez*, 388 F.3d at 1242.

Nonetheless, despite the propriety of joinder under Rule 8(b), a court may order severance if it finds sufficient prejudice exists to one or more of the defendants.  Thus, Federal Rule of Criminal Procedure provides:

> If the joinder of . . . defendants . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14.  In light of that legal framework, the Court now turns to the basis for the motion to sever.

### 2. *Bruton* Rule

A defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating confession of a non-testifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.  *See Bruton*, 391 U.S. at 126, 136–37.  Under *Richardson v. Marsh*, 481 U.S. 200 (1987), the *Bruton* rule is limited to confessions of a non-testifying codefendant that are facially incriminating of another defendant. Here, defendant's motion focuses on the anticipated proffer of the following statement recorded while Sleugh was incarcerated and speaking on the telephone with his girlfriend Asia Lee: [2]

> [Sleugh]: But after that they did go on, after that de yout[h] get fired, me did tell him keep you distance from me cause I don't love you no more, I don't wanna fuck you no more cause your pussy stink so

---

[2] Although defense counsel's briefing appears to take issue with several statements, including statements made to the police by Sleugh, at the hearing on this motion counsel identified expressly the single statement that forms the basis for the instant Bruton argument, wherein Sleugh was speaking on the phone with his girlfriend.  (Tr. 15:19-16:20.)

keep your distance from me bitch. That's why you notice me and her wasn't really hanging out, we weren't going to Miami no more, we wasn't going to New York no more. I just stop fucking with the bitch for a little bit. I started lying to her. She would call me like "baby can I come over"

[Lee]: (laughs)

[Sleugh]: And I would be like nah, I'm hanging with my other bitch or I'm waiting for my other girl to get off work. I just kind of like drifted her away from me a little bit cause if anything happened with her and her husband I didn't want to get involved with that."

The Court finds that the statement at issue is not so "powerfully incriminating" that it falls within the scope of *Bruton*. Importantly, the statement here is not directly incriminatory. Unlike the statements at issue in *Bruton* and *Richardson*, it is not a confession directly referring to Boyd.[3] Moreover, it does not implicate Boyd expressly. Rather, the statement here was an allegedly coded statement that Sleugh made to his girlfriend in which Boyd is not mentioned at all. The drug deal and killing are not discussed explicitly, and the all references Sleugh made, which Boyd claims relate to him, use feminine pronouns and refer to the individual (allegedly Boyd), as a woman. Thus, it is not facially incriminating in the way that *Bruton* forbids; several inferential leaps must be made in order for the statement to be incriminating at all.[4] Notably, Boyd acknowledges that the jail recordings of which the relevant statement is a part are "vague and

---

[3] The seminal *Bruton* cases cited by Boyd pertain to circumstances involving *confessions*, statements given to law enforcement relating directly to the declarant's guilt. *See Bruton*, 391 U.S. at 126, 135–36; *Richardson*, 481 U.S. 200; *Gray v. Maryland*, 523 U.S. 185, 190 (1998); *Mason v. Yarborough*, 447 F.3d 693, 697 (9th Cir. 2006) (Wallace, J., dissenting) (noting that Fenton's confession was not admitted into evidence).

[4] Moreover, although Boyd argues that his Sixth Amendment rights would be violated by the admission of Sleugh's coded statement to his girlfriend, Boyd has not established (and the Court is doubtful) that the statement itself is testimonial in nature. *Bruton* concerned fundamentally testimonial and highly prejudicial, facially incriminating statements. The Supreme Court thus found that statements of this nature constituted just such a "powerfully incriminating extrajudicial statemen[t]," and that the introduction of such into evidence, insulated from cross-examination, violated Bruton's Sixth Amendment rights. *Bruton*, 391 U.S. at 135; *see also Gray*, 523 U.S. at 190. Statements to law enforcement, as in the case of *Bruton*, are of a testimonial nature and thus trigger the Sixth Amendment. No party has briefed whether statements to one's girlfriend qualify as such, and the Court is not willing to assume as much.

7

United States District Court
Northern District of California

1  often subject to interpretation." (MTS at 2.) Thus, on the record before the Court, the motion to

2  sever on this basis is **Denied**.

3      ### 3.  Mutually Antagonistic Defenses

4          In some circumstances, "mutually antagonistic" or "irreconcilable" defenses may be so

5  prejudicial as to mandate severance. *Zafiro*, 506 U.S. at 538 (citations omitted). "Mutually

6  exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for

7  the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (citing

8  *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)). "The prototypical example is a trial in

9  which each of two defendants claims innocence, seeking to prove instead that the other committed

10 the crime." *Tootick*, 952 F.2d at 1081 (citing *United States v. Holcomb*, 797 F.2d 1320, 1324 (5th

11 Cir. 1986)). The Ninth Circuit has instructed that "[m]utual exclusivity may exist when "only one

12 defendant accuses the other, and the other denies any involvement." *Tootick*, 952 F.2d at 1081

13 (citing *United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984)). For a proclamation of

14 innocence to constitute an accusation, the facts of the dispute must be closed in a fashion that does

15 not suggest the intervention of some unknown actor.

16         However, "mutually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14

17 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to

18 be granted, if any, to the district court's sound discretion. *Zafiro*, 506 U.S. at 538–39 (citing *Lane*,

19 474 U.S. at 449, n. 12; *Opper v. United States*, 348 U.S. 84, 95 (1954)). As the Supreme Court

20 indicated in *Richardson,* less drastic measures than a severance, such as limiting instructions,

21 often will suffice to cure any risk of prejudice. *Zafiro*, 506 U.S. at 539 (citation omitted).

22         Here, Boyd argues that he and the co-defendant will present mutually antagonistic

23 defenses. By definition, the Court must consider both defenses. On the one hand, Boyd submits

24 that he intends to argue that co-defendant Sleugh acted alone and without his knowledge in

25 planning to rob and kill the decedent. However, he does not go so far as to indicate that he has

26 any direct knowledge of these events. Rather, it appears that the defense will be that, to the extent

27 Sleugh is in fact guilty, he acted alone and without Boyd's knowledge. On the other hand, Boyd

28 then speculates that Sleugh will argue that he was not present for, nor involved in, the robbery and

killing, *i.e.* that Sleugh is denying the allegations. (Reply to MTS at 7.) Accordingly, at this juncture, there is no mutually antagonistic defense. Sleugh denies the allegations and Boyd has no knowledge of the events. Accordingly, the motion to sever on this basis is **DENIED**.

### CONCLUSION

Accordingly, the motions to dismiss and to sever are **DENIED**.

This terminates Docket Nos. 64, 65.

**IT IS SO ORDERED.**

Dated: January 26, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT**

United States District Court
Northern District of California

9

Exhibit 3

**In the United States District Court**
**for the Northern District of California**
**District Judge Edward M. Chen**

**CRIMINAL MINUTES**

| | |
|---|---|
| **Date:** | February 25, 2015 |
| | **Time:** 4:12-4:55 |
| | **Court Reporter:** Kathy Sullivan |
| **Case No. and Name:** | CR13-0731 EMC USA v. |
| | (1) Henry Huang (custody)(Cantonese) |
| | (2) Jilian Zhang (custody)(Mandarin) |

| | | |
|---|---|---|
| **Attorneys:** | Plaintiff: | Adam Wright |
| | Defendant: | Dan Blank and Gabrila Bischof for Defendant Henry Huang |
| | Interpreter: | Tom Lam and Anthony Tam (Cantonese) for Huang |
| | Defendant: | Richard Tamor for Defendant Jilian Zhang |
| | Interpreter: | Marilyn Luong and Mary Ma (Mandarin) for Zhang |

| | |
|---|---|
| **Deputy Clerk:** | Betty Lee |

**PROCEEDINGS:**

- Defendant Zhang's Motion to Dismiss for Improper Venue or in the Alternative Bill of Particulars #85

- Defendant Huang's motion to sever #82

**ORDERED AFTER HEARING:**

For the reasons stated on the record, Defendant Zhang's Motion to Dismiss for Improper Venue or in the Alternative Bill of Particulars #85 is denied.

For the reasons stated on the record, Defendant Huang's motion to sever #82 is granted to the extent Government fails to provide for appropriate redaction of co-conspirator statement.

Government shall submit revised redacted statements by 2/27/15. Defendant's response due 3/3/15. Court to issue order by 3/4/15. Defendant Zhang's motion re: introduction of redacted statement shall be filed 3/11/15. Response due 3/18/15. Hearing on Zhang's motion re: introduction of redacted statement set for 3/25/15 at 2:30 p.m.

Discovery, including Rule 16 discovery but not documents from grand jury proceedings, is to be completed by 2/27/15.

Approximately 1-week joint jury trial remains set for 4/20/15 at 8:30 a.m. Pretrial conference is scheduled for 3/31/15 at 2:30 p.m.

# Exhibit 4

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

FILED

2015 MAR 18 P 3: 29

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| DOMNIIC GABRIEL GRISSETT and | ) | Case No. |
| RICHARD OBRYANT BUSH | ) | |
| | ) | |
| | ) | 3 – 1 5 – 7 0 3 3 6 |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

**MEJ**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___2011 through March 18, 2015___ in the county of ___San Franisco & elsewhere___ in the ___Northern___ District of ___California & elsewhere___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. Sec. 846 | Conspiracy to possess at least 5 kilograms of cocaine with intent to distribute |

This criminal complaint is based on these facts:

Attached Affidavit of Special Agent David VanderPorten, Federal Bureau of Investigation

Approved as to form: _____ , AUSA
415-308-7834

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent David VanderPorten, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-18-15

_____
*Judge's signature*

City and state:      San Francisco, CA

Hon. Maria-Elena James
*Printed name and title*

## AFFIDAVIT OF DAVID VANDERPORTEN

I, David VanderPorten, Special Agent, Federal Bureau of Investigation (FBI), San Francisco, California, being first duly sworn, hereby depose and state as follows:

1.      I am an investigative or law enforcement officer of the United States as defined in Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.      I respectfully submit this Affidavit in support of a Criminal Complaint charging DOMINIC GABRIEL GRISSETT and RICHARD OBRYANT BUSH with conspiracy to possess 5 kilograms and more of cocaine with intent to distribute, in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(A).

3.      The facts stated in this Affidavit are based on my personal knowledge, on my review of reports prepared by other law enforcement officers and records prepared by others, and on conversations I had with other law enforcement officers involved in this investigation.  I have not set forth each and every fact learned during the course of this investigation in this Affidavit. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of the individuals listed in this Affidavit.  In addition, where I convey information received from others, such information is provided in sum and substance and relevant part.

## SECTION I:  AGENT BACKGROUND

4.      I am a Special Agent with the Federal Bureau of Investigation and have been so employed since August, 2008.  Prior to being assigned to the San Francisco office of the FBI, I completed a 21 week New Agents Training program at the FBI Academy in Quantico, Virginia. During my employment as a Special Agent, I have participated in numerous drug, financial, and organized crime investigations.  I obtained training at the California Narcotic Officers' Association convention which included detailed instruction in the many aspects of illicit manufacturing and distribution of marihuana, cocaine, heroin, and methamphetamine. I have also

obtained training at the Attorney General's Money Laundering conference which included detailed instruction on money laundering activities. During these investigations I have gained expertise in law enforcement techniques including the use of physical surveillance and electronic surveillance techniques such as Title III wiretaps, pen registers and traps, pole cameras, and global positioning satellite tracking devices. I have experience in the use of undercover agents and informants to collect evidence with body recorders and transmitters. I have experience analyzing toll records, financial records, and utility records. The investigations on which I have worked have resulted in the arrests of multiple individuals and the seizure of a variety of items of evidence.  I am presently assigned to the San Francisco Field Office of the FBI, where I am part of the Asian Organized Crime Squad. As part of my duties within this unit, I investigate violations of federal law, including narcotics trafficking, violent crimes, racketeering, and money laundering committed by organized crime groups.

5.      I have investigated criminal enterprises that employ sophisticated money laundering techniques to conceal the profits of their illicit activities, including the use of front companies, straw buyers, fraudulent invoices, and international wire transfers. I have been the affiant on numerous search warrants over the last seven years.

## SECTION II:  FACTS ESTABLISHING PROBABLE CAUSE

6.      On February 24, 2015, the Grand Jury in the Northern District of California returned a 132-count Indictment against nine defendants charging them with a variety of federal crimes.  One defendant who was charged was Vladimir Handl, who was charged with racketeering, in violation  of Title 18, United States Code, Section 1962(c), racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d)), money laundering conspiracy and money laundering, in violation of Title 18, United States Code, Section 1956, and conspiracy to possess cocaine with intent to distribute, in violation of Title 21, United States Code, Section 846.  Paul Fink was also charged with Handl in the narcotics conspiracy.  See 15-CR-126-WHO.

7.      I learned the following from other law enforcement officers, including from an FBI Undercover Employee (UCE), that, since 2011 to the present, Handl laundered cash

proceeds represented by the UCE to be derived from a Colombian drug trafficking organization. Handl, along with others, laundered the money through various businesses he and his co-conspirators controlled.

      a.      During their dealings, Handl repeatedly asked the UCE to sell him cocaine supplied by the UCE's putative Colombian connections.  UCE advised Handl that his organization would only participate in such a transaction if the size of the order made it worth the risk.

      b.      Prior to a March 2014 meeting involving Handl and the UCE in Las Vegas, Nevada, Handl advised the UCE that he had an associate with property in northern California that was about to be purchased by a big telecommunications company.  Handl asked for UCE's assistance to launder some of the proceeds from the sale through a non-profit entity so that Handl's associate could avoid paying at least some of the taxes from the sale.  Handl added that his associate intended to use the remainder of the proceeds to purchase cocaine from the UCE's putative Colombian organization.

      c.      During a meeting in Las Vegas, Nevada, on March 6, 2014, Handl introduced the UCE to Fink, who had the property that was being sold to a telecommunications company.  Fink, Handl, and the UCE then discussed ways to launder some of the proceeds of sale the above-referenced sale through a non-profit entity.  Handl and Fink also inquired about using the remainder of the proceeds from the property sale to purchase ten kilograms of cocaine.  UCE agreed to introduce Handl and Fink to putative drug dealers.  Fink and Handl anticipated the sale of Fink's property would take place within a few months.

      d.      Handl continued to discuss the property sale and the related criminal schemes with the UCE over the next year. Handl repeatedly told the UCE there were delays in the sale of Fink's property.  Then, in or about February 2015, Handl and the UCE engaged in multiple conversations to discuss an alternative financing plan for the cocaine purchase: UCE could arrange a "hard money loan" to finance the cocaine purchase if Fink was willing to secure the loan with his as-of-yet unsold property. The UCE offered Handl the

quantity of cocaine could be adjusted to his liking and Handl ultimately settled on three kilograms. After thinking about the terms of the hard money loan, Handl agreed to arrange for Fink and the UCE to meet to discuss the details.

e.      On March 4, 2015, Fink and the UCE discussed the above-referenced financing plan through multiple electronic mail messages, text messages, and Skype conversations. Fink agreed he was interested in having three kilograms of cocaine delivered to Handl and the purchase would, in part, be financed by a "hard money loan" with a 1% origination fee and 1% monthly interest charge. The loan would be paid back by Handl via the profits from the sale of cocaine. However, in the event of any problems, such as as Handl's potential arrest, Fink agreed to secure the loan against default with the equity of his property.

f.      On March 5, 2015, Handl and the UCE discussed further details of the cocaine purchase through a Skype conversation. Handl stated that he wanted to avoid personally handling the product and would prefer for it be handed directly to his sales guy. The UCE advised Handl the UCE's associates would not want to meet a new guy without having him checked out by "security guys on the payroll," which was a coded reference to corrupt police officers. Handl agreed to provide names, pictures, license plates, etc., of his sales guy to facilitate the background check. On March 10, 2015, Handl sent a text message to the UCE with a photograph of a driver's license of his cocaine buyer. The driver's license was for DOMINIC GABRIEL GRISSETT, date of birth 08-25-1992, South Carolina Driver's license 101697734, listed address of 716 Ira Drive, Myrtle Beach, South Carolina 29579.

g.      On March 12, 2015, Handl and the UCE through Skype discussed Handl's cocaine sales guys. Handl confirmed GRISSETT was just a runner who would pick up the cocaine being procured by Handl. Handl identified the actual sales guy as "Richard Bush." On March 13, 2015, Handl emailed the UCE a picture of a South Carolina Identification Card. The Identification Card was for RICHARD OBRYANT BUSH, date of birth 02-23-1988, South Carolina Identification Card 100159462.

h.      In preceding discussions relating to the cocaine for property deal, Handl and Fink communicated with the UCE via telephone, Skype, and electronic messages while the UCE was in San Francisco, California.

i.      On March 17, 2015, the UCE met with both GRISSETT and BUSH in the presence of Handl.  During this meeting, Handl agreed to purchase three kilograms of cocaine on the following day and asked for a second order of an additional twelve kilograms of cocaine a week later.  Handl provided the UCE with approximately $31,000 in cash as a partial payment for the three-kilogram deal.

## SECTION III:  CONCLUSION

8.      For the foregoing reasons, I respectfully submit there is probable cause to believe that DOMINIC GRISSETT and RICHARD OBRYANT BUSH have conspired to possess at least five kilograms of cocaine with intent to distribute, in violation of Title 21, United States Code, Section 846.

I declare under penalty of perjury that the statements above are truce and correct to the best of my knowledge and belief.


DAVID VANDERPORTEN
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before me
this ____ day of March, 2015.


HON. MARIA-ELENA JAMES
United States Magistrate Judge

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| RICHARD OBRYANT BUSH | ) | |
| | ) | |
| | ) | **3 - 15 - 7 0 3 3 6** |
| | ) | |
| _Defendant_ | ) | |

## ARREST WARRANT

*MEJ*

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    RICHARD OBRYANT BUSH                                                    ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☑ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. Sec. 846 - Conspiracy to possess at least 5 kilograms of cocaine with intent to distribute

Date: 3-18-15

_____
*Issuing officer's signature*

City and state:    San Francisco, CA

Hon. Maria-Elena James, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____        _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>DOMINIC GABRIEL GRISSETT | )<br>)<br>)<br>)<br>)<br>) |

Case No.

3-15-70336

_Defendant_

**MEJ**

## ARREST WARRANT

To:     Any authorized law enforcement officer

  **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_     DOMINIC GABRIEL GRISSETT                                                                              ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☑ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:

  21 U.S.C. Sec. 846 - Conspiracy to possess at least 5 kilograms of cocaine with intent to distribute

Date:  3-18-15

_____
_Issuing officer's signature_

City and state:   San Francisco, CA

Hon. Maria-Elena James, U.S. Magistrate Judge
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____<br>at _(city and state)_ _____ . |
| Date:  _____                                _____<br>                                                                    _Arresting officer's signature_<br><br>                                                                    _____<br>                                                                    _Printed name and title_ |