1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

VLADIMIR HANDL AND OTHERS,

        Defendants.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯/

No. CR 15-0126 WHA

**ORDER DENYING DEFENDANT GAITHER'S MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT**

**INTRODUCTION**

    In this eleven-defendant RICO prosecution, a defendant moves to dismiss the charges against him based on outrageous government conduct. For the reasons stated herein, defendant's motion is **DENIED**.

**STATEMENT**

    The background of this case has been laid out in detail in a previous order denying two other defendants' motions to dismiss for outrageous government conduct (Dkt. No. 304). Essentially, there are three different groups of charged crimes in the superseding indictment. *First*, Counts One through 121 charge defendants Vladimir Handl, Michael Rose, Peter Scalise, PML Clubs, Inc. (which operated a string of strip clubs, night clubs, and restaurants), and David Gaither with racketeering, conspiracy, and offenses related to money laundering and bank fraud. *Second*, Counts 122 through 131 charge defendants Richard Leyland and Edward Hetherton with a separate conspiracy to commit money laundering, substantive counts of money laundering, and theft of government property. *Third*, Count 132 charges defendants Handl,

1    Rose, and Gaither, along with defendants Paul Fink, John McGaha, Dominic Grissett, and

2    Richard Bush with conspiracy to possess with intent to distribute cocaine.

3          As described in detail in the previous order, defendants Handl, Rose, and Scalise were

4    the main players in the money-laundering conspiracy.  The record reveals that defendant

5    Gaither, the subject of this motion, entered the picture when Rose brought him to a meeting

6    with the undercover FBI agent in October 2013.  At that meeting, Rose told the agent that

7    Gaither, as the manager of several of Rose's clubs, had been engaged in much of the previous

8    money-laundering conduct.  Gaither assured the agent that he was "at the top of the old security

9    clearance" (Gov't Exh. 1 at B-000022).  Gaither went on to describe that he had formerly been a

10   crooked police officer.  In a subsequent meeting with Rose and the agent, Gaither discussed

11   ways in which the group could test out whether others were cooperating with law enforcement

12   and offered to introduce the group to corrupt law enforcement officers who could provide

13   protection for a potential drug transaction (*id*. at B-000059).

14         Now, defendant Gaither moves to dismiss the charges against him based on outrageous

15   government conduct.

16                                          **ANALYSIS**

17         "Outrageous government conduct is not a defense, but rather a claim that government

18   conduct in securing an indictment was so shocking to due process values that the indictment

19   must be dismissed.  To meet this high standard, the governmental conduct must be so grossly

20   shocking and so outrageous as to violate the universal sense of justice."  *United States v. Holler*,

21   411 F.3d 1061, 1065–66 (9th Cir. 2005).  In other words, the government's conduct must be

22   "excessive, flagrant, scandalous, intolerable, and offensive" to violate due process.  *Ibid*.

23         The factual defense of entrapment is a separate issue for a jury at trial.  To dismiss an

24   indictment based on outrageous government conduct, a defendant must meet an "extremely high

25   standard."  *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993).  "[I]t is

26   outrageous for government agents to engineer and direct a criminal enterprise from start to

27   finish."  It is not outrageous, however, "to approach individuals who are already involved in or

28   contemplating a criminal act, or to provide necessary items to a conspiracy.  Nor is it

*United States District Court*

For the Northern District of California

outrageous for the government to use artifice and stratagem to ferret out criminal activity." *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (citations omitted). Indeed, there is only one reported decision in which our court of appeals has ever reversed a conviction under this rule. *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971). Subsequent to that decision, our court of appeals has stated that *Greene* "may be an entrapment rather than an outrageous government conduct case" and "does not reflect the current law of the circuit on outrageous government conduct." *United States v. Haas*, 141 F.3d 1181 (9th Cir. 1998).

In *Black*, our court of appeals set forth six factors that should be considered when deciding a motion to dismiss for outrageous government conduct:

> (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

*Black*, 733 F.3d at 303. "These do not constitute a formalistic checklist, but help focus our analysis on the totality of the circumstances." *Id*. at 304.

*Black* involved a fictitious stash house robbery which "resulted from an operation created and staged by the ATF." There, our court of appeals' "major concern" was that the government found the defendants in that case by "trolling for targets" at a rough bar in a bad part of town and stressed "[t]he risk inherent in targeting such a generalized population." Additionally, in *Black*:

> The only overt actions by the defendants involved showing up at meetings, including arriving at the parking lot with four hidden, loaded weapons and then driving to the storage warehouse where they were arrested. Although those actions clearly corroborate the defendants' intent to carry out an armed robbery, defendants were responding to the government's script.

*Black*, 733 F.3d at 303. Despite this, *Black* affirmed the convictions and deemed that the government's conduct had not been outrageous.

A previous order denied defendants Handl and Rose's motions to dismiss for outrageous government conduct, stating that although the Court was "bothered by the fact that the entire

United States District Court

For the Northern District of California

multi-year criminal enterprise constituted a fiction from the beginning . . . a close review of the record does not show the government's conduct to be so grossly shocking and so outrageous as to violate the universal sense of justice" (Dkt. No. 304 at 12).

Here, defendant Gaither offers nothing new to support the conclusion that the government acted outrageously towards him.  As an initial matter, this order notes that Gaither's motion, even with the additional time allowed him to prepare it, appended no exhibits, declarations, recordings, or any evidentiary record whatsoever.  It merely consisted of unsworn argumentative statements in the brief.  Even so, the evidentiary record provided by the other defendants and by the government demonstrates that Gaither became an eager and willing participant in the enterprise.

The first two *Black* factors, known criminal characteristics and individualized suspicion of the defendants, are similar and shall be considered together.  As stated above, Gaither came into the picture via an introduction from defendant Rose, who described Gaither as a former crooked police officer who had participated in earlier money-laundering transactions.  The government did not seek him out.  Rather, Rose brought him to the undercover agent's attention as someone who had already been involved and could offer helpful perspective as a former law enforcement officer.

The third, fourth, fifth, and sixth *Black* factors relate to the government's role in creating the crime, encouragement of defendants, the government's participation in the crime, and whether the nature of the crime necessitated the government's actions.  As to these factors, Gaither has failed to provide any shred of evidence indicating that the government's actions toward him differed in any material way from the government's actions towards defendants Handl and Rose.  Rather, similar to Handl and Rose, the record showed Gaither to be an eager and willing participant who provided advice on how to determine whether a money courier happened to be a government informant and offered to seek out law enforcement officers who would offer protection for the drug transaction.

1   Gaither has not met the "extremely high standard" that would warrant dismissing the

2   indictment at this stage. *Garza-Juarez*, 992 F.2d at 906.[*]

3                                   **CONCLUSION**

4   For the reasons stated herein, defendant Gaither's motion to dismiss for outrageous

5   government conduct is **DENIED**.

6

7   **IT IS SO ORDERED.**

8

9   Dated: October 29, 2015.

    WILLIAM ALSUP
10  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

    *   The Court reserves the authority, after hearing all the trial evidence, to grant relief based on the greater evidentiary record.

5