BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6758
    Facsimile: (415) 436-6753
    E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 15-CR-0126-WHA |
| v. | ) | |
| | ) | GOVERNMENT'S MOTIONS IN LIMINE |
| VLADIMIR HANDL, et al., | ) | |
| Defendants. | ) | |

## I.      Introduction

The Government respectfully submits the following motions in limine for the Court's

consideration seeking: (A) to preclude, pursuant to Fed. R. Evid. 608(b), the introduction of extrinsic

evidence for impeachment; (B) the consideration of evidence already in the record to support the

admission of evidence, including co-conspirator statements under Fed. R. Evid. 801(d)(2)(E); (C) to

require the defendants to proffer a basis for any *Henthorn*-type questions before questioning a law

enforcement officer; (D) to require the defendants to provide some evidentiary basis for any affirmative

defense, including entrapment; (E) to preclude the defendants from arguing a negative inference from

the absence of any particular type of evidence; (F) to preclude the defense from exposing the jury to

information not in evidence; (G) to require the defendants to specify any items of evidence to which

they object under Rule 404(b); (H) to reserve the use of a prior conviction for impeachment under Fed. R. Evid. R. 609; (I) to preclude reference by the defense to punishment; (J) to allow undercover agents to testify in court with protective security precautions in place; and (K) to preclude the defense from using materials they have failed to produce in violation of Fed. R. Crim. P. 16(b).

The Government would respectfully request the opportunity to supplement these motions in limine in case any additional legal issues requiring the Court's intervention arise.  Likewise, because the defendants have not yet provided any reciprocal discovery, as required under Fed. R. Crim. P. 16(b), or provided any information relating to their respective cases, the Government would also request the opportunity to supplement these motions in limine to address any issues triggered by the defense.

## II.    Discussion

### A.    Extrinsic Evidence for Impeachment Should Generally be Precluded

The underlying investigation involved undercover law enforcement agents rather than cooperating defendants.  Accordingly, the usual defense tactic of trying to distract the jury from the evidence of the defendants' guilt by impeaching the Government's witnesses is less likely to be an issue.

Nevertheless, because such a tactic is standard practice, the Government would respectfully reiterate that Rule 608(b) of the Federal Rule of Evidence limits the admissibility of extrinsic evidence for impeachment:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Thus, under Rule 608(b), a party may ask a witness about specific conduct if doing so would be probative of the witness's credibility, but a party may not go beyond inquiring and seek to admit extrinsic evidence simply to impeach the witness.  *See United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) (noting that Rule 608(b) "generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness"); *United States v. Castillo*, 181 F.3d 1129, 1132-33 (9th Cir. 1999) ("Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity."), *quoted in United States v. Antonakeas*, 255 F.3d 714, 724

(9th Cir. 2001); *United States v. Bosley*, 615 F.2d 1274, 1276-77 (9th Cir. 1980) (holding that district court erred by allowing Government, in contravention of Fed. R. Evid. 608(b), to call witness to contradict defendant's statement made on cross-examination and explaining "[u]pon Bosley's denial that he had delivered cocaine to Rhodes or anyone else, the Government could attempt on further cross examination to elicit a response from Bosley contradicting his prior testimony, but it could not properly impeach Bosley through extrinsic evidence of Bosley's delivery of cocaine to Rhodes"); *see also United States v. Hickson*, 585 F.3d 1247, 1258, 1266 (9th Cir. 2009) (*en banc*) (in reviewing denial of motion for new trial, affirming, among other things, district court holding that additional affidavits serving to impeach key Government cooperating witness would not have been admissible pursuant to Fed. R. Evid. 608(b) because they would have merely impeached witness on issue other than crimes charged); Rule 608, 1972 Proposed Rules, Note to subdivision (b) (explaining that "[c]onviction of crime as a technique of impeachment is treated in detail in Rule 609, and here is merely recognized as an *exception to the general rule excluding evidence of specific incidents for impeachment purposes*") (emphasis added).[1]

There is, of course, a recognized, limited exception to Rule 608(b)'s general prohibition against the admission of extrinsic evidence for impeachment, called "impeachment by contradiction." As the Ninth Circuit explained:

> Impeachment by contradiction "permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." *United States v. Castillo*, 181 F.3d 1129, 1132 (9th Cir.1999). Impeachment by contradiction is an exception to the collateral fact rule embodied in Federal Rule of Evidence 608(b), which generally prohibits the introduction of extrinsic evidence to attack the credibility of a witness. When impeaching by contradiction, the fact to be contradicted must be material. 4 Joseph M. Mclaughlin, *Weinstein's Federal Evidence*, § 608.20[3] [a], at 608-38 (2d ed.1999). Impeachment by contradiction is permitted to prevent witnesses from engaging in perjury and then using the prohibition on collateral fact testimony to conceal the perjury. *Castillo*, 181 F.3d at 1132-33 (citing 2A Charles A. Wright & Victor J. Gold, Federal Practice & Procedure, § 6119, at 116-17 (1993)). We have also recognized that, when making the decision whether to permit impeachment by contradiction, trial courts should consider the Rule 403 factors, such as confusion of the jury or the cumulative

---

[1] In an unpublished decision, the Ninth Circuit held that the district court properly denied, pursuant to Fed. R. Evid. 608, the defendant's motion to impeach an agent with witness testimony about the agent's putative past perjured testimony and explained that "[t]his extrinsic evidence would have created a mini-trial on Agent Goldberg's past behavior, the very distraction Rule 608 seeks to guard against." *United States v. Burns*, 2000 WL 898739, at 4 (9th Cir. July 6, 2000). The *Burns* panel relied on the Eighth Circuit decision in *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992), which held that, "The purpose of barring extrinsic evidence is to avoid holding mini-trials on peripherally related or irrelevant matters."

nature of the evidence. *See id.* at 1133; 4 McLaughlin, § 607.06[3][b], at 607-79.

> Impeachment by contradiction comes with an important limitation. In general, a witness may be impeached by contradiction only if "the statements in issue [have] been volunteered on direct examination." *United States v. Green*, 648 F.2d 587, 596 n. 12 (9th Cir.1981) (emphasis added). In *Castillo*, we read our cases to hold that "extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination." 181 F.3d at 1133. We explained that when the testimony to be contradicted is offered under cross-examination, impeachment by contradiction is far less likely to achieve its intended purpose of rooting out perjury because "opposing counsel may manipulate questions to trap an unwary witness into 'volunteering' statements on cross-examination" and because "it is often difficult to determine whether testimony is invited or whether it is volunteered on cross-examination." *Id*. at 1133-34.

*United States v. Kincaid-Chauncey*, 556 F.3d 923, 932 (9th Cir. 2009) (emphasis in original).

Thus, as *Kincaid-Chauncey* explains, even the exception itself to Rule 608(b)'s general prohibition against the introduction of extrinsic evidence for the purpose of impeachment comes with a significant limitation: impeachment by contradiction can only be done to impeach statements volunteered on direct examination, not statements elicited on cross-examination. *See Castillo*, 181 F.3d at 1133 (holding that "extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination"); *Green*, 648 F.2d at 596 n.12 ("The Government urges that Rule 608(b) should not be construed [to limit impeachment], since it gives witnesses the opportunity to commit perjury without fear of rebuttal. This contention might be persuasive had the statements in issue been volunteered on direct examination or unelicited on cross-examination. Here the statements were given in direct response to specific questions asked on cross-examination. If the Government believed that it had elicited an untruthful remark, its remedy, as noted in *Bosley*, was to impeach the witness through cross-examination.").[2]

In light of the explicit general prohibition on the introduction of extrinsic evidence for impeachment under Rule 608(b) and Ninth Circuit case law, the defendants should not be allowed to hijack the trial and distract the jury by introducing extrinsic evidence for the putative purpose of impeachment.

---

[2] In an unpublished decision, the Ninth Circuit held that the district court abused its discretion by allowing the prosecution to use extrinsic evidence to impeach the defendant based on statements he made during *cross-examination* and explained that "[a] witness may only be impeached on a specific matter when the witness' testimony is truly volunteered." United States v. Clements, 2001 WL 1173247, at *1 (9th Cir. Oct. 3, 2001).

**B.** **The Court Can and Should Consider Evidence Already Presented to It in Determining the Admissibility of Evidence at Trial, Including the Admissibility of Co-Conspirator Statements**

Federal Rule of Evidence Rule 104(a) provides that

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).  In making its determination *it is not bound by the rules of evidence except those with respect to privileges*.

Consistent with Rule 104's plain meaning, the Supreme Court has held that in making a preliminary factual determination as to the admissibility of evidence, with the exception of privileged information, a trial court may consider "any evidence whatsoever" and "receive the evidence and give it such weight as his judgment and experience counsel." *Bourjaily v. United States*, 483 U.S. 171, 178 (1987).  Similarly, "[i]n determining whether the Government established the existence of a conspiracy for the purpose of Fed. R. Evid. 801(d)(2)(E), Rule 104 'on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.' *Bourjaily v. United States*, 483 U.S. 171, 178 (1987)." *United States v. Brewer*, 947 F.2d 404, 409 (9th Cir. 1991).

Thus, under Rule 104(a), the Court should look to evidence already presented to it when it decides the admissibility of co-conspirator statements under Rule 801(d)(2)(E) at trial. [3]  Such evidence includes, for example, the various exhibits attached to the defendants' motions to dismiss, which indicate that they did in fact acted in concert to launder what they believed were criminal proceeds.

---

[3] A co-conspirator's statement may be admitted against a defendant under Fed. R. Evid. 801(d)(2)(E) "where the prosecution shows by preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made 'in furtherance of' the conspiracy." *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006).

In addition,

[w]hen determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make any preliminary finding that the government has proved the conditional fact. [citing *Huddleston v. United States*, 485 U.S. 681, 690]  Instead, "[t]he court simply examines all the evidence in the case and decides *whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence*." *Id.*

*United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005) (emphasis added).

In sum, under Rule 104(a), the pre-trial record can and should be used to augment the trial record in determining the admissibility of evidence.

### C. The Defendants Should be Required to Proffer a Good-Faith Basis for Any _Henthorn_-Type Inquiry of a Law Enforcement Witness

The Government anticipates that the defendants may (if they have not already done so) subpoena the personnel files of law enforcement officers and, thus, will be in possession of a wide array of sensitive material, both relevant and irrelevant.  The Government respectfully requests that the defendants be required to make some offer of proof and offer of relevance regarding any alleged misconduct by law enforcement officers outside the presence of the jury prior to inquiring about such alleged misconduct before the jury.  Such a proffer is especially needed where the area of proposed inquiry relates to alleged officer misconduct that is unrelated to credibility.  This is appropriate since improper questions regarding such issues as allegations of improper use of force or illegal search are highly inflammatory and should not be casually presented to the jury.  The Government should not be put in a position of constantly having to object, then constantly having to rehabilitate officers based upon irrelevant and unsupported lines of questioning.  Therefore, the Government requests the Court decide on the admissibility of _Henthorn_-type questioning of law enforcement officers prior to such questioning occurring and outside the presence of the jury.  _See_ Fed. R. Evid. 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.").

### D. The Defendants Should be Required to Provide Some Evidentiary Basis for Any Affirmative Defense

The Government is unaware of any viable affirmative defense – including entrapment – that any defendant can claim. Therefore, if any of the defendants intends to offer an affirmative defense, he should be required to make some offer of proof to the Court sufficient to warrant placing such matters before the jury.

While the Government bears the burden of proof beyond a reasonable doubt, a defendant is required to make some preliminary showing to support an affirmative defense.  "If the evidence is

insufficient to support the defense as a matter of law . . . the court may exclude evidence of the defense or refuse to instruct on its elements." *United States v. Karr*, 742 F.2d 493, 497 (9th Cir. 1984); *United States v. Shapiro*, 669 F.2d 593, 596 (9th Cir. 1982). As the Supreme Court has stated, "[i]f, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *United States v. Bailey*, 444 U.S. 394, 417 (1980). If no such showing is made, then the Court should restrict the defendants from not only making any arguments to the jury regarding any affirmative defense, but should preclude any evidence offered in support of such a defense.

> E.     *The Defendants Should be Precluded From Attempting to Argue Any Negative Inference From the Absence of Any Particular Type of Evidence or Testing*

The Government, of course, bears the burden of proving each defendant's guilt beyond a reasonable doubt. This burden, however, does not require the presentation of any particular type of evidence. In addition, this case has been pending since March of 2015, and during this time, the defendants have been given access to the evidence the Government has in its possession. Thus, the defendants should not be permitted to make "missing evidence" arguments, *i.e.*, to argue that a particular type of evidence is required in order to convict or that the jury cannot convict without a particular type of evidence, which would be an improper statement of the law. *See, e.g.*, *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) (holding that uncorroborated testimony of even a single accomplice witness can be sufficient to convict).

> F.     *The Defendants Should be Precluded From Publishing to the Jury Information not in Evidence*

Fed. R. Evid. 103(c) provides that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Consistent with this rule, the Court should preclude defense counsel from making speaking objections that serve no proper purpose except to present inadmissible information or simple argument to the jury. Similarly, the defense should also not be allowed to read the contents of documents not in evidence to the jury under

the guise of questioning a witness or refreshing a witness's recollection.

   G.  *Rule 404(b) Does Not Bar Any of the Evidence in this Case*

   The Government anticipates that the defendants may seek to invoke Fed. R. Evid. 404(b) as a bar to evidence in this case.  If so, any such invocation would be mistaken.

   Fed. R. Evid. 404(b) precludes the admission of "other crimes, wrongs or acts" to prove the character or criminal propensity of the defendant, but allows such evidence to be used for the limited purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  This rule does not apply, however, where the evidence that the Government seeks to introduce is directly related to or inextricably intertwined with the crimes charged in the indictment. *See United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1091 (9th Cir. 2007) ("Rule 404(b) does not exclude evidence forming an essential element of the charged crime."); *United States v. DeGeorge*, 380 F.3d 1203, 1219 (9th Cir. 2004) (holding that evidence that was inextricably intertwined with alleged criminal activity was not subject to strictures of Rule 404(b)); *see, e.g.*, *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (holding that evidence that defendant stole cocaine was directly related to charged drug trafficking conspiracy). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also United States v. Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004).  This is particularly true in the context of racketeering prosecutions.

   For example, in *United States v. Rubio*, 727 F.2d 786, 797-98 (9th Cir. 1983), the Ninth Circuit found no error in the trial court's admission of evidence of the defendant's prior drug conviction as direct evidence, and not as Rule 404(b) material, proving the existence of the racketeering enterprise and association of the defendant in the enterprise.  In addition, as Seventh Circuit explained in *United States v. Salerno*, 108 F.3d 730, 739 (7th Cir. 1997), the Government must prove the existence of the enterprise, and evidence introduced to establish the existence and nature of the enterprise is not barred by Rule 404(b)'s prohibitions.  Likewise, in *United States* v. *DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), the Second Circuit explained that "[p]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct

1    participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges

2    against each defendant. . . . ."  Significantly, the Ninth Circuit quoted *DiNome* in *United States* v.

3    *Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004), when the Ninth Circuit affirmed the denial of a

4    severance motion in a racketeering case, explaining that all the "spillover" evidence about which the

5    defendant complained would have been admissible against him anyway in a separate trial.

6              Consistent with the law, several courts in the Northern District of California have held that in

7    racketeering cases, much of evidence proffered prior to trial was not 404(b) material but rather,

8    enterprise proof.  Accordingly, the Government's representation that it had no Rule 404(b) material was

9    sufficient, and that the defendants needed to object to specific items of evidence that they contended ran

10   afoul of Rule 404(b).  *See, e.g., United States v. Cerna, et al.*, February 14, 2011 Pretrial Conference

11   Transcript (Docket #3574) at 204-210.  As with the MS-13 case, none of the evidence that the

12   Government intends to present in its case in chief in this case will be offered to prove mere criminal

13   propensity.  Rather, such evidence will be offered to prove the existence of the charged racketeering

14   enterprise, which is directly probative of the elements of the racketeering-related charges.  Accordingly,

15   Rule 404(b)'s prohibition does not apply.  Should the defendants object to the any of the evidence as

16   mere propensity evidence, they should be required to specify which particular item of evidence they

17   claim is barred by Rule 404(b).

18          *H.      Use of Prior Convictions to Impeach Defendants Under Fed. R. Evid. 609?*

19              Defendant Handl has been convicted of drug possession.  If he testifies, and depending on what

20   he testifies to, the Government may seek admission of this conviction for impeachment.

21              Evidence of a defendant's prior convictions is admissible for impeachment purposes under

22   Federal Rule of Evidence 609(a)(1), which provides in relevant part:

23              [E]vidence that an accused has been convicted of . . . a [felony] crime shall be admitted if
             the court determines that the probative value of admitting this evidence outweighs its
24           prejudicial effect to the accused.

25              Thus, under Rule 609, any felony, regardless of whether it involves truth telling, may be used to

26   impeach the credibility of a testifying defendant.  *See United States v. White*, 463 F.2d 18, 20 (9th Cir.

27   1972); *United States v. Michaelson*, 453 F.2d 1248, 1249 (9th Cir. 1972); *Nutter v. United States*, 412

28   F.2d 178, 181-82 (9th Cir. 1969).

In balancing the probative value of the prior conviction for impeachment purposes with its prejudicial effect, the court should consider the following five factors:  (1) the impeachment value of the prior crime; (2) the time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.  *See United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).

It is difficult prospectively to analyze at this time the admissibility of Handl's conviction under the five-factor test set forth in *Hursh*.  After all, the importance of the defendant's testimony and the centrality of the credibility issue have not yet materialized.  Thus, the Government respectfully reserves its right to use Handl's conviction for impeachment.

I.       *The Defense Should not be Allowed to Reference Punishment to the Jury*

The Government moves to preclude, as irrelevant and prejudicial, any reference by the defense to the defendants' potential sentence during all phases of the trial (including jury selection, opening statements, examination of witnesses, including the defendants if they elect to testify, and summation). That reference could be as overt as, "You understand the defendant is facing a potential life prison term if convicted," or more subtle such as, "the defendant is facing a lot of time," "this case has serious consequences for the defendant," "the defendant's liberty is at stake in this trial," or "your decision will have consequences for a long time to come."  Once the jury hears anything about punishment, the bell simply cannot be un-rung or the damage neutralized by a curative instruction.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).  As explained in *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962):

> To inform the jury that the court may impose minimum or maximum sentence, will or will not grant probation, when a defendant will be eligible for parole, or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.

*Id*. at 508; *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion"); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (explaining that jury should have been admonished that it "had no sentencing

function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (holding that trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court.  It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused").  Therefore, defense counsel should be precluded from making any reference in the presence of the jury to punishment in statements, questions or argument.

>    J.    *The Court Should Allow Undercover Agents to Testify in Court with Protective Security Precautions in Place*

This investigation used several undercover agents, at least some of whom continue to operate as undercover agents in ongoing investigations.  Accordingly, should any of these undercover agents testify at trial, the Government would respectfully request that certain protective security precautions be taken so that the agents' safety and their operational viability will not be compromised.   The Government would note that Judge Breyer in an ongoing trial has authorized such precautions.  *See United States v. Chow*, 14-CR-0196-CRB.  Should the defendants dispute this motion, or should the Court seek additional information relating to this motion, the Government is prepared to provide the Court with additional supporting information *ex parte* and under seal.

The Government respectfully suggests either of the following two protective precautions:

**Option 1**: When the undercover agents testify, only the Court, essential personnel, the jury, the defendant and his counsel, and the Government's trial team shall be present in the courtroom.  The public may view the proceedings via contemporaneous video broadcast in a spillover room, but that video broadcast shall not display the images of the undercover agents while the undercover agents are testifying.

**Option 2:** When the undercover agents testify, the public may be present in the courtroom, however, no digital devices capable of taking photographs or video will be permitted in the courtroom.  In addition, no materials that can be used to draw sketches will be permitted in the courtroom.  Finally, a screen shall be installed such that the defendants and jury can see the undercover agents when they testify, but the general public cannot.

In either case, the Government asks the Court to prohibit the defense from asking any questions seeking identifying information of the undercover agents.  The Government also asks that it be permitted to redact the facial images of the undercover agents on any video or photograph exhibits retained by the Court for public filing (although unredacted videos and photos will be offered at trial and presented for the jury).

It should be noted that the Government is *not* seeking to take the drastic step of closing the courtroom, or preventing the public from observing these proceedings in general.  To the contrary, the Government seeks to take reasonable, limited measures solely to protect the safety and security of its undercover agents, who, as described to the Court in previous pleadings, may continue to be engaged in undercover activities in other, unrelated cases.

The Sixth Amendment guarantees the right to a public trial.  U.S. Const. Amend. VI; *see also Waller v. Georgia*, 467 U.S. 39 (1984).  The right to a public trial assures the defendant receives a fair trial, promotes the integrity of the fact finding process, preserves public confidence in the criminal justice system, and affords the community an outlet to address crime.  *See Waller*, 467 U.S. at 46.  However, the Supreme Court has recognized the right to a public trial is not absolute and under certain circumstance the trial court may implement reasonable trial procedures to protect other compelling interests, without violating the Sixth Amendment.  *Id*. at 45.

The Supreme Court in *Waller* examined under what circumstances criminal proceedings could be closed to the public and gave four factors to determine if a party is justified in closing proceedings:

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

467 U.S. 39, 48 (1984).  Although the Government is not seeking here to close the proceedings, these factors are instructive in determining the appropriateness of the Government's proposal.

"The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and . . . this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom."  *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997).  "It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers."  *Rodriguez v.*

*Miller*, 537 F.3d 102, 110 (2d Cir. 2008).  In *Brown v. Artuz*, 283 F.3d 492, 501-02 (2d Cir. 2002), the Second Circuit held that protecting an undercover officer's safety satisfied the first prong of the *Waller* test and was an overriding interest likely to be prejudiced if the courtroom was open to the public during the officer's testimony.  Taken together, these cases make clear that protecting other investigations and ensuring a law enforcement officer's safety are both compelling government interests, in satisfaction of the first *Waller* factor.

While the Government is not aware of any particular individual who might attend the proceedings during the undercover agents' testimony who would pose a threat, there is "no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity."  *Ayala*, 131 F.3d at 72.  The risk that anyone in the courtroom might reveal the appearance of the undercover agents to others would create a personal danger to the agents and would run the risk of jeopardizing unrelated, ongoing FBI investigations.

As to the second *Waller* factor, the proposed measures requested by the Government to protect the security and safety of the undercover agents, and to protect the integrity of other undercover investigations, are no broader than necessary to protect the Government's overriding interests.  The Government in this case is not seeking the drastic measure of closing the courtroom during the testimony of the agents.  The Government only seeks to protect from disclosure the true identity of the undercover agents.  To accomplish that goal, the Government has proposed two reasonable alternatives for the Court to choose from, described in further detail above, both of which will protect the defendants' Sixth Amendment rights while allowing the public to hear the testimony of the undercover agents in real time.

While the requested procedures would shield from public view the facial images of the undercover agents while they testify, the defendants themselves would suffer no such deprivation, as they would be able to observe the undercover agents throughout their testimony.   This procedure will not deprive the defendants of the ability to confront the agents when they testify against him, nor will it deprive the defendants or the jury of the ability to evaluate the agents' demeanor.  Moreover, in both of the options described above by the Government, the public would be able to hear the undercover agents' testimony in its entirety, either via video broadcast (Option 1) or in person (Option 2).  In addition, the

transcript of the undercover agents' testimony would be made available to the public in its entirety after the testimony is concluded.  As a result, on balance, the deprivation to the public pales in comparison to the Government's interest in concealing the undercover agents' identities from the public during their continued work as undercover agents.

For all of the reasons set forth above, prohibiting the public dissemination of any reproductions of the undercover agents' physical images will not impair any Sixth Amendment rights.  This Court's policy is to prohibit the taking of in court photographs or videotape of criminal trials in any event.  Here a written transcript of the undercover agents' testimony will be available to the public, and the public can hear the agents' voices on recordings and as they testify in real time.  Only the visual images of the undercover agents on the witness stand will be obscured from the public.  Thus, all the measures proposed by the Government are narrowly tailored to protect the important and substantial Government interests at issue.

As to the last *Waller* factor, the Government proposes that the Court make the following findings based on the foregoing legal authorities: 1) The reasonable measures proposed by the Government are necessary to protect from disclosure of the true identity of the undercover agents at trial; 2) Disclosure of the undercover agents' true identities would jeopardize ongoing undercover investigations and the Government's undercover investigative procedures; and 3) the undercover agents face real and substantial risks of danger to themselves and their families if the undercover agents' physical images were to be made publicly available.

### K.  The Defense Should be Precluded from Using Any Material They Have Failed to Produce in Violation of Fed. R. Crim. P. 16(b)

The defendants have disclosure requirements under Fed. R. Crim. P. 16(b).  The Government has and will continue to comply with its discovery and disclosure obligations and has requested reciprocal discovery.  The defendants, however, have not yet responded.  Therefore, the Government moves to exclude any evidence and arguments referring to documents, objects, and reports that have not been timely disclosed.  Courts have "the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness."  *United States v. Richter*, 488 F.2d 170, 173 (9th Cir. 1973), quoting *United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969); *see also Richter,* 488 F.2d at 173

(holding that a district court has "wide latitude" to "carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice").  The Government requests that the Court use its power to effectuate the orderly administration of justice by ensuring that the defendants comply with their discovery obligations in a timely manner.

**III.     Conclusion**

For all of the foregoing reasons, the Court should rule as set forth above if and when the issues identified arise.  The Government would respectfully reserve the right to supplement these motions in limine if additional issues requiring the Court's ruling arise.

Dated: January 20, 2016

Respectfully submitted

BRIAN J. STRETCH
Acting United States Attorney

By: _____/s/_____

Damali A. Taylor
Stephen J. Meyer
W.S. Wilson Leung
Assistant United States Attorneys