1  BRIAN J. STRETCH (CABN 163973)
United States Attorney

2

DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  LLOYD FARNHAM (CABN 202231)
ANDREW F. DAWSON (CABN 264421)
5  Assistant United States Attorney

6      450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
7      Telephone: (415) 436-6973
FAX: (415) 436-7234
8      andrew.dawson@usdoj.gov

9  Attorneys for United States of America

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,              )   NO. 15-CR-00126 WHA
                                         )
15        Plaintiff,                     )
                                         )   UNITED STATES' SENTENCING
16     v.                                )   MEMORANDUM
                                         )
17  MICHAEL ROSE,                        )
                                         )   Sentencing Hearing:
18        Defendant.                     )   May 31, 2016, 2:00 p.m.
                                         )
19  _____     )

20

21  **I.      INTRODUCTION**

22        The government submits this memorandum in advance of the sentencing hearing for defendant

23  Michael Rose ("defendant").  Defendant pleaded guilty to all the charges against him in the Superseding

24  Indictment.

25        Defendant was charged with various offenses related to a money-laundering scheme and a

26  narcotics distribution conspiracy that arose from an FBI undercover investigation of defendant and his

27  co-conspirators.  Over the course of nearly three years, defendant and others engaged in money

28  laundering by accepting large amounts of cash they believed to be derived from cocaine trafficking.

US SENTENCING MEMORANDUM RE MICHAEL ROSE
NO. 15-CR-00126 WHA                          1

1   Defendant then assisted some of his co-conspirators in an attempt to purchase cocaine from an

2   undercover FBI agent.

3       As discussed further below, defendant was aware of the magnitude and scope of the illegal

4   activities he was engaging in, and believed that he was laundering the proceeds from a large-scale drug-

5   distribution organization.  The government submits that the defendant should be sentenced to the low

6   end of the applicable guidelines range as determined by the Court.

7   **II.     FACTUAL BACKGROUND**

8       **A.     The Defendant's Conduct**

9       This case arose from an undercover investigation by agents from the FBI.  During the

10  investigation, the primary undercover agent ("UC") posed as an associate of a large organization that

11  needed to illegally conceal and then launder cash.  The investigation began in 2009 and focused initially

12  on other targets, Edwin Hetherton and Richard Leyland, later expanding to include Peter Scalise and

13  Vladimir Handl.  PSR, ¶¶ 10-11.

14      Handl was subsequently responsible for introducing defendant Rose into the conspiracy.  After

15  Handl and Scalise laundered $300,000 for the UC in early 2012, they asked the UC if he had need of any

16  other money laundering services.  PSR, ¶ 14.  At that point, Handl and Scalise were told that the UC

17  needed to launder large amounts of cash from the sale of cocaine.  Handl and Scalise then arranged a

18  meeting between the UC and defendant Rose.  *Id.*  Defendant was an owner of various night clubs and

19  restaurants, including several strip clubs on the East Coast.  Beginning in June 2012, the UC and other

20  agents—posing as associates of a large-scale cocaine distribution organization—would bring cash to

21  drop off to defendant and Handl, meeting in one of defendant's five clubs.  In total, the UC made

22  thirteen cash drop-offs to defendant and Handl, amounting to $2.35 million in cash.  After the drop-offs,

23  defendant and Handl would either wire back funds to the accounts specified by the UC or send a check,

24  while keeping a percentage as payment.  PSR, ¶ 15.

25      By September 2013, defendant wanted to expand his dealings with the UC.  He and the UC

26  agreed to have the UC's clients launder money by investing it in defendant's new Gold Club in Las

27  Vegas, Nevada, and he promised that the UC would be paid 12% of the profits.  When the UC expressed

28  concern that his client would not want to submit to a background check—which would be required

US SENTENCING MEMORANDUM RE MICHAEL ROSE
NO. 15-CR-00126 WHA                                    2

1    under Nevada law for an owner of a business that sought a liquor license—defendant assured the UC

2    that any payments would be made secretly through false business expenses.  PSR, ¶ 16.  In connection

3    with this investment, the UC travelled to Las Vegas and met with defendant and David Gaither in

4    October 2013.  Defendant confirmed the terms of the deal at the meeting, and the UC gave defendant

5    $50,000 in cash as an initial payment of the total $200,000 investment.  PSR, ¶ 17.  Two months later,

6    the UC delivered the rest of the $200,000 to defendant.  *Id.*

7         While this large-scale money laundering scheme went on, Handl also asked the UC if he could

8    obtain cocaine, in amounts ranging from one kilogram to 10 kilograms or more.  The UC initially

9    discouraged Handl.  In March of 2014, Handl introduced the UC to another associate, Paul Fink, who

10   Handl said could finance the purpose of cocaine through the sale of property Fink said was worth more

11   than $1 million.  At a meeting in Las Vegas, Fink and Handl agreed to purchase cocaine through the UC.

12   PSR, ¶¶ 19-20.  Ultimately, on March 17, 2015, Handl met with the UC twice at Handl's night club, and

13   Handl agreed to an initial purchase three kilograms of cocaine, to be delivered the next day.  Handl paid

14   the UC approximately $31,000 in cash—the price as agreed for one kilogram of cocaine.  Handl also

15   ordered an additional 12 kilograms of cocaine to be delivered to Myrtle Beach a week later.  PSR, ¶¶ 21-

16   25.

17        Also on March 17, 2015, defendant Rose and Gaither met with the UC, who informed them of

18   Handl's plan to purchase 3 initial kilos of cocaine, to be followed by twelve more kilos the following

19   week. PSR, ¶ 26.  At that meeting, defendant, Gaither, and the UC discussed paying a law enforcement

20   officer to protect the planned transaction.  After Gaither proposed David McGaha, defendant agreed to

21   work with Gaither to retain McGaha's services.  Later on March 17, defendant and Gaither told the UC

22   that McGaha was "fully onboard" and that McGaha knew he would be protecting "pineapples." PSR, ¶¶

23   26-27.  Defendant had also previously agreed to launder funds from the drug sale.  PSR, ¶¶ 19, 31.

24        Defendant Rose and other conspirators were arrested the morning of March 18, the day that the

25   drug transaction was scheduled to take place.

26   **B.    Rose Pleads Guilty**

27        On January 25, 2016, defendant pled guilty to Counts 1, 2, 3, 17-121, and 132 of the Superseding

28   Indictment.  See Dkt. No. 340.  In defendant's Application for Permission to Enter a Guilty Plea, he

US SENTENCING MEMORANDUM RE MICHAEL ROSE
NO. 15-CR-00126 WHA                           3

1    admitted that between approximately May 2012 and December of 2014, he and his conspirators took

2    cash that they believed to be the proceeds of drug trafficking and laundered it.  See Dkt. No. 339, ¶ 5.

3    Rose also admitted that, in connection with the drug conspiracy, he "engaged in discussions about

4    securing the services of a police lookout for what I thought was an impending drug transaction,

5    concurred with the recommendation of the particular lookout who was chosen, and aided in the initial

6    efforts to secure the services of that lookout."  *Id.*

7          **C.**      **The Charges against the Defendant**

8          Based on the conduct described above, Rose was charged in an indictment, then a superseding

9    indictment, and faced the following charges:

10             a.  Racketeering Conspiracy, 18 U.S.C. § 1962(d) [Count 1]

11             b.  Racketeering, 18 U.S.C. § 1962(c) [Count 2]

12             c.  Money Laundering Conspiracy, 18 U.S.C. § 1956(h) [Count 3]

13             d.  Money Laundering, 18 U.S.C. § 1956(a) [Counts 17-121]

14             e.  Conspiracy to Distribute a Controlled Substance, 21 U.S.C. § 846 [Count 132]

15   **III.**   **PENALITIES**

16         **A.**      **Statutory Penalty Range**

17         The Government agrees with the statutory terms of imprisonment as set forth in the Presentence

18   Report.  PSR, ¶ 85.  For all the charges against Rose except the drug conspiracy charge, the statutory

19   maximum sentence is 20 years.  For Count 132, the charge of conspiracy to distribute more than 5

20   kilograms of cocaine, the maximum term of imprisonment is life and the minimum term is 10 years.  21

21   U.S.C. § 841(a)(2)(A).  The probation office has concluded that the "safety valve" provisions apply, and

22   therefore no mandatory minimum term of imprisonment applies to Rose.

23         The Government also agrees with the statutory term of supervised release as set forth in the

24   Presentence Report.  PSR, ¶ 87.  For Counts 1 through 121, the Court may impose up to three years of

25   supervised release.  For Count 132, the drug conspiracy count, the term of supervised release is not less

26   than 5 years.

27         **B.**      **Guidelines Range**

28         The government agrees with the Sentencing Guidelines calculation as described in the

1    Presentence Report.  PSR, ¶ 86.  The total offense level is 29, and based on a Criminal History Category

2    of I as determined by the Probation Office, the applicable guideline range is 87 to 108 months.

3    **IV.    LEGAL STANDARD**

4        The Court should impose a sentence sufficient, but not greater than necessary, to reflect the

5    purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  United States v. Carty, 520

6    F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate

7    sentence by calculating the correct sentencing range under the Guidelines.  Id.  The Sentencing

8    Guidelines are "the 'starting point and the initial benchmark,'" United States v. Kimbrough, 128 S. Ct.

9    558, 574 (quoting United States v. Gall, 128 S. Ct. 586, 596), and are to be kept in mind throughout the

10   process.  See Gall, 128 S. Ct. at 596-97, n. 6.  As noted by the Ninth Circuit, the Supreme Court has

11   "clarified that we may attach a presumption of reasonableness to sentences falling within the Guidelines

12   range."  United States v. Saeturn, 504 F.3d 1175, 1178 (9th Cir. 2007) (emphasis added).  After

13   determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for

14   substantive reasonableness in light of the factors set out in Section 3553(a).  Carty, 520 F.3d at 991-93.

15       Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court

16   should consider these factors, among others:

17           (1)    the nature and circumstances of the offense and the history and characteristics of

18                  the defendant;

19           (2)    the need for the sentence imposed to reflect the seriousness of the offense, to

20                  promote respect for the law, and to provide just punishment for the offense;

21           (3)    the need for the sentence imposed to afford adequate deterrence to criminal

22                  conduct;

23           (4)    the need to avoid unwarranted sentence disparities among defendants with similar

24                  records who have been found guilty of similar conduct.

25   **V.    SENTENCING RECOMMENDATION**

26       In light of Defendant Rose's sustained and willing participation in the crimes at issue, along with

27   his role in recruiting others into the conspiracy, the government recommends that he be sentenced at the

28   low-end of the applicable Guidelines range.

US SENTENCING MEMORANDUM RE MICHAEL ROSE
NO. 15-CR-00126 WHA                                5

1    After Defendant Rose was introduced into the money-laundering conspiracy by Vladimir Handl,

2  he became a willing, eager, and enterprising co-conspirator. Over the course of nearly three years, Rose

3  met repeatedly with the UC and accepted millions of dollars of cash to be laundered—cash that Rose

4  believed to be the proceeds of a major cocaine trafficking organization.  On thirteen separate occasions,

5  the UC went to one of Rose's clubs to drop off supposed drug money to be laundered, and on thirteen

6  separate occasions Rose had the opportunity to say "no more."  He never did.  On the contrary, Rose and

7  Handl repeatedly accepted the money, laundered it, and kept a cut for themselves.  Nor was Rose

8  content to simply accept fees for his money laundering.  By September of 2013, Rose wanted to expand

9  his involvement with the UC and use the purported drug money to benefit his business ambitions.  So

10  Rose accepted a $200,000 "investment" from the UC to benefit a new club Rose had developed in Las

11  Vegas, and he agreed to pay the UC's client its portion of profits through false business expenses.

12    As the investigation continued, Rose was also responsible for recruiting others into the

13  conspiracy.  First, Rose was responsible for introducing his friend David Gaither into the conspiracy in

14  connection with the Las Vegas Gold Club investment.  Second, Rose and Gaither were both responsible

15  for recruiting David McGaha to serve as a lookout for the planned drug transaction.  After meeting with

16  McGaha, Rose assured the UC that McGaha was "fully on board" with the plan and knew he would be

17  protecting "pineapples."  Nor did Rose's support of the planned drug transaction end there, as he had

18  previously agreed to launder the proceeds of the sale of cocaine.

19    In light of this conduct, the government submits that defendant Rose should be sentenced at the

20  low-end of the applicable Guidelines range.

21  **VI.    CONCLUSION**

22    Under the applicable provisions of the Sentencing Guidelines, the factors of 18 U.S.C. § 3553(a)

23  as applied to this defendant and this criminal conduct, the government requests that the Court impose a

24  sentence that includes a custodial sentence at the low end of the guidelines as calculated and considered

25  //

26  //

27  //

28  //

US SENTENCING MEMORANDUM RE MICHAEL ROSE
NO. 15-CR-00126 WHA                6

1 by the Probation Office, 87 months in custody.

2 DATED: May 24, 2016     Respectfully submitted,

3              BRIAN J. STRETCH
               United States Attorney

4

                /s/
5             LLOYD FARNHAM
               ANDREW F. DAWSON
6             Assistant United States Attorney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28